APOSTOLOS B. CASCAMBAS *et al. vs.* CITY OF NEWPORT *et al.*

JULY 2, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Municipal Corporations.    Interest in Beach Property.*

The limit of the claim of the City of Newport to Easton's Beach must be that it holds the property without any special beneficial interest in the public; that it may use it as it does other property which it holds for municipal purposes, and may dispose of it when in its judgment, it is no longer required for such purposes.

*(2) Municipal Corporations.    Ancient Lands.    Dedication to Public Use.*

In 1714 the freemen represented the original proprietors of Newport and a meeting of the freemen could declare and put into effect the agreement of the proprietors made in 1641, and thereafter all lands not laid out and

allotted became common lands dedicated to public use. Among these common lands was Easton's Beach.

(*3*) *Municipal Corporations. Ancient lands. Dedication to Public Use.*

Where the action of a town in defending an action was in support of the claim of the inhabitants to right of common, the settlement of the controversy and the indenture of plaintiff purporting to convey his title to the town must be construed so as to effectuate those rights and the town will not be permitted in compromise to get in an adverse claim of title and then set up that claim against its own inhabitants and the public.

(*4*) *Municipal Corporations. Ancient Lands. Public User. Lease.*

The city of Newport holds title to Easton's Beach in trust for its inhabitants and the public, to be used by them in the manner and for the purposes for which in the circumstances and in accordance with the times, it is adapted, with the right in the city to establish reasonable regulations concerning the public use and the further right to lease a portion of the beach if the public are not excluded therefrom and the purpose and effect of such lease is the furtherance of the public use for which the beach is held.

(*5*) *Municipal Corporations. Leases.*

A lease by a municipal corporation of land held by it in trust for its inhabitants and the public, for the term of twenty years, in furtherance of the public use, is not unreasonable in respect to its term, where the lessee bound itself to expend a large sum of money in new buildings and improvements, to become the property of the city and to pay a substantial rental during the term.

(*6*) *Municipal Corporations. Municipal Government of Newport. Powers. Leases.*

The power to determine the provisions of a lease for Easton's Beach and to direct its execution resides in the representative council of Newport, and unless otherwise directed by such council the board of aldermen under the charter must be regarded also as a proper governmental agency to administer the public trust.

Unless otherwise directed by the representative council the board of aldermen in the exercise of its executive power could properly authorize the mayor to execute such lease and the action of the representative council in referring to the board of aldermen the matter of leasing the property with direction to advertise for bids and to make a lease not to exceed twenty years and in compliance with the recommendations of a commission, was unobjectionable.

BILL IN EQUITY seeking relief on facts fully set forth in the opinion. Heard on appeals of complainants and respondents and appeal of complainants dismissed. Appeal of respondents sustained.

SWEETLAND, C. J.   The above entitled cause is a bill in equity praying that a lease of a portion of Easton's Beach in the city of Newport for the term of twenty years, executed May 31, 1922, between the city of Newport as lessor and the Newport Beach Association as lessee be declared null and void, and ordered to be cancelled.

The complainants, as citizens, residents, real estate owners and taxpayers in the city of Newport, urge in behalf of the prayer of the bill (1) that the city of Newport was without power to make such lease and (2) if the first claim of the complainants be not sustained, then that the board of aldermen of said city exceeded its authority in directing the making of said lease.

The cause was heard before a justice of the Superior Court upon amended bill, answer, replication and proof and a decree was entered which in substance decreed that the city of Newport did have power and authority to grant a lease of that portion of Easton's Beach described in the instrument under consideration but that said instrument purporting to be a lease was unauthorized, is invalid, and should be cancelled.

The cause is before us upon the appeal of the complainants from that portion of the decree which declares that the city of Newport has power to make a lease of a portion of said beach.   The cause is also here upon the appeal of the respondents from that portion of the decree which adjudges that the instrument in question is invalid and orders its cancellation.   It cannot be questioned that the city of Newport holds title to Easton's Beach in some manner. The respondents claim that the city does so in a purely corporate capacity, having the same power as a private corporation or a private individual to lease or otherwise use or dispose of it.   This implies the power to hold it solely for profit and speculation which is open to serious question in the absence of special legislative authorization.   We think the limit of the claim of the respondents in this regard must be that the city acquired the beach, and holds it, without

any special beneficial interest in the public; that it may use it as it does other property which it holds for municipal purposes and may dispose of it when, in the judgment of the city, it is no longer required for such purposes. The contention of the complainants is that Easton's Beach was not allotted to any individual by the original proprietors or the freemen of Newport, but was dedicated by them to the use of the inhabitants of Newport forever; that the city of Newport holds title to the beach as a governmental agent, merely, in trust for the benefit and enjoyment of the public, and that the city is without power to dispose of the beach or to make the lease in question.

The respondents base their claim upon an indenture dated September 27, 1788, by and between Edmund Townsend, Treasurer of the Town of Newport, and Nicholas Easton. This indenture, according to its recitals, was made for the purpose of compromising certain disputes between Nicholas Easton and the town and its inhabitants concerning Easton's Beach, Marsh, and Pond. By this indenture Nicholas Easton granted said beach, marsh and pond to Townsend "to and for the Only Use, benefit and behoof of said Town of Newport as a body Politic forever," and Townsend in behalf of the town gave up and surrendered to Nicholas Easton, his heirs and assigns forever, the exclusive right to take and carry away all seaweed cast by the sea upon the shores of the beach.

At the time of this indenture the right and title of Nicholas Easton in the beach, if he possessed any, was in succession from another Nicholas Easton who in 1640 received certain allotments of land from the proprietors of the town of Newport. Two of these were of land in the vicinity of Easton's Beach, and the respondents claim that one or both included the beach. It is difficult at this time to apply to the land the descriptions contained in these allotments. After consideration of the evidence we have reached the conclusion that the land described in the first allotment clearly did not include any portion of the beach which is now situated in

the city of Newport.   As to the second allotment we find it impossible to apply the description therein to the land with any certainty, but are of the opinion that it did not include any portion of the beach but was of land lying north of the beach and west of Easton's Pond.   There is no evidence of an allotment of the beach by the proprietors of Newport to any other person.   In the record of a meeting of the freemen of the town held in 1704 it is recited that the proprietors in 1641 had agreed that after three hundred more acres were laid out the remainder should be a perpetual common.   At a meeting of the freemen in 1714 it was voted that all vacant pieces of land in the town should be laid out as a perpetual common.   We are of the opinion that in 1714 the freemen (2) represented the original proprietors of Newport, that a meeting of the freemen could declare and put into effect the agreement of the proprietors made in 1641, and that thereafter all lands not laid out and allotted became common lands dedicated to public use.   We approve the claim of the complainants that Easton's Beach was included in these common lands.   From the evidence it appears that the beach was so treated by the inhabitants of the town down to the time when Nicholas Easton, one of the parties to the indenture of 1788, referred to above, claimed the beach as successor in title to that Nicholas Easton, to whom said allotments were made in 1640.   To test his claim, in 1785 he sued Giles Sanford, one of the inhabitants of Newport, for trespass upon the beach.   The town appointed a committee to defend the suit in behalf of the town.   The papers in this suit have been lost, but it appears that the suit was determined adversely to the plaintiff, who then applied to the General Assembly for a new trial, which was granted. At a town meeting of the town of Newport, July 28, 1788, the committee appointed to defend the town in said suit were authorized to adjust the controversy between Easton and the town and as a result said indenture of September 27, 1788 was executed.

As we have said above, we find that the Nicholas Easton to whom allotments were made in 1640 acquired no interest in the beach; hence the Nicholas Easton who executed the compromise indenture of 1788, claiming through the former Nicholas Easton, possessed no title and conveyed none to (3) the town. Further we approve the contention of the complainant that whatever may have been the title of Nicholas Easton, the action of the town in the suit against Sanford was in support of the claim of the inhabitants to rights of common in the beach, and that the settlement of the controversy and the indenture must be construed so as to effectuate those rights. The town will not be permitted in compromise to get in an adverse claim of title and then set up that claim against its own inhabitants and the public. We conclude that the city of Newport as successor to the town of Newport holds title to the beach in trust for the benefit of the inhabitants and the public, to be used by them (4) in the manner and for the purposes for which in the circumstances, and in accordance with the times, the beach is adapted. It has always been used by the public for sea bathing. In early times it was also used by the inhabitants of the town as a source of supply for sand and gravel; finally this use became so extensive as to injure the beach, and the taking of sand and gravel was prohibited by the city. In later years it has been used exclusively for sea bathing and as a place of resort for pleasure and recreation.

Without question the city would have authority to establish reasonable regulations concerning the public use and enjoyment of the beach, and the city might make a lease of a portion of the beach if the public were not excluded therefrom, and the purpose and effect of such lease was the furtherance of the public use for which the beach is held. This is in accord with reason and is supported by ample authority.

Leases of portions of the beach, from time to time, have been granted by the city to persons who have operated public bath houses, restaurants and other enterprises for the convenience and accommodation of the public. The use of

Easton's Beach, as a pleasure resort, has become so exten-
sive, that for the purpose of increasing its usefulness to the
public, and improving the appearance of its buildings
architecturally, the representative council of Newport in
April, 1921, created a commission of twelve members, con-
sisting of five members of the representative council, two
members of the board of aldermen and five citizens appointed
by the mayor, "to consider the Easton Beach situation."
This commission made a very comprehensive and detailed
report of its findings to the representative council of the city.
From this report it is apparent that the commission gave
careful study to all the questions involved; they made a
number of recommendations designed to enhance the
beauty of the beach and add to its availability as a place of
public resort and recreation. On January 13, 1922, the
representative council referred this report to the board of
aldermen and authorized and directed the board to advertise
for proposals for the leasing of Easton's Beach for a term not
exceeding twenty years and to award a lease therefor "to the
person, firm or corporation submitting a proposal in sub-
stantial compliance with the recommendations of said com-
mission on Easton's Beach, as outlined in the said report."
The board of aldermen then advertised for sealed proposals
for a lease of that portion of Easton's Beach now in question
and made the report of the Commission on Easton's Beach
a part of the advertisement. Among the persons who sub-
mitted proposals in response to this advertisement was the
respondent, the Newport Beach Association. The proposal
of said association together with its bid No. 1, the letter of
its architect, Hobart B. Upjohn, a plat and a drawing, were
considered by the board of aldermen as "in substantial
compliance with the recommendation of said commission on
Easton's Beach," and upon the authorization of the board
of aldermen the lease now under consideration was executed
by the mayor of Newport on behalf of the city. In the
circumstances, this lease in its provisions appears to us
clearly to be in aid of the use of the beach by the public.

One of the objections urged against the lease is the length of the term.   The term of twenty years is not unreasonably long in the circumstances.   The recommendations of the commission required the expenditure of a very large sum of money by a lessee for new buildings and other improvements and in the upkeep of the beach.   The respondent, the Newport Beach Association, in this lease binds itself to expend $340,000 in new buildings and improvements in the first ten years of the term, to keep all buildings insured and in good order during the term of the lease and to pay a yearly rental of $4,000.   The lease further provides that all buildings and improvements are to be the property of the city of Newport.   In view of this outlay and obligation on the part of the lessee, the granting by the city of a term of this length is a proper exercise of its duty in administering the public trust.

Further objection is made that the representative council could not give to the board of aldermen the wide, discretionary power which the acceptance of the proposal for the present lease required.   The form of municipal government granted to the city of Newport by its Amended Charter of 1906 (Chapter 1392, Public Laws, January Session, 1906) is unusual.   Under the Amended Charter a body known as the representative council is created consisting of one hundred and ninety-five members which meets infrequently.   In this council is vested the control of the city's "fiscal, prudential and municipal affairs," with the general and special powers conferred by statute on city councils.   The executive powers of the city, except as otherwise directed by the representative council, are vested in a mayor and a board of five aldermen. The board of aldermen meets frequently, and "shall exercise a general supervision over all matters affecting the public welfare of the city" and "unless otherwise specially provided, all the powers, general or special, now conferred by statute upon town councils and boards of aldermen shall in the city of Newport be vested in the board of aldermen." By Chapter 50, Section 4, General Laws, 1909, it is provided:

"The town council of each town shall have full power to manage the affairs and interests of such town." In our cities under the ordinary form of city government the city councils would manage property held as Easton's Beach is held by the city of Newport. In our towns the management would be in the town councils. The power to determine the provisions of a lease for Easton's Beach and to direct its execution undoubtedly resides in the representative council; and, unless otherwise directed by the representative council, the board of aldermen under the charter must also be regarded as a proper governmental agency to administer this public trust. Previous to the lease now under consideration it appears that the representative council has in each instance declared the advisability of leasing portions of the beach for bathing houses, restaurants and amusement privileges, and has delegated to the board of aldermen, as the body particularly clothed with executive powers, the determination regarding the details of the lease. In this case, unless directed otherwise by the representative council, the board of aldermen in the exercise of its executive power might properly have authorized the mayor to execute a lease similar to the one in question. The representative council by its action referred to the board a matter over which the board had authority, unless restrained by the council, with direction to advertise for bids and to make a lease, save that the board was directed not to make a lease for a longer term than twenty years, nor one the proposal for which was not in substantial compliance with the recommendations of the commission. In our opinion there is no force in this objection of the complainant.

It is also urged that the board of aldermen in disregard of the direction of the representative council accepted a proposal and directed the execution of a lease which were not in substantial compliance with the recommendations contained in the commissioners' report. We have examined the report, the proposal with the documents accompanying it, the lease and the evidence, and are of the opinion that this

objection is unwarranted.    In the proposal we find no departure from the recommendations of the commission in any essential particular.    There is the evident intention on the part of the lessee to accept these recommendations as the rule which is to govern its conduct under the lease.    The bid accompanying the proposal is entitled "Bid No. 1.    Following The Recommendations Of The Easton's Beach Commission."    In the proposal the Association agrees to expend $340,000 following the plans of its architect "and conforming to the recommendations of the Easton Beach Commission as close as is possible."    In his letter to the board of aldermen, which accompanies the proposal and bid and is regarded as a part of them, Mr. Upjohn the architect says: "It is my intention to follow the original plan as closely as possible and to conform to the recommendations of the Easton's Beach Commission."    In the lease the lessee covenants that it will expend the sum of $340,000, "in accordance with the plans and specifications of Hobart B. Upjohn, architect, entitled 'Proposed Easton's Beach Improvement,' with letter from said Hobart B. Upjohn to the board of aldermen of the city of Newport, bearing date March 13, 1922, accompanying and explaining the same and forming a part thereof."    The lessee further covenants that in the development of the demised premises, all additions, alterations and improvements shall be made under the direction of the board of aldermen; that in all improvements costing $3,000 or over, the lessee shall submit to the board of aldermen for its approval a copy of the plans and specifications in working detail of such improvements, the failure on the part of the lessee to file such plans and specifications shall be a good and sufficient cause for the cancellation of the tenancy under the lease; that as to all expenditures in the development of the demised premises costing less than $3,000 the lessee shall first submit to the board of aldermen a written statement of the work to be done and expenditures to be made for the approval of said board of aldermen. There is no reason to assume that during the term of the

lease the board of aldermen, representing the interests of the city and the public, will not insist upon a substantial compliance with the recommendations of the Easton's Beach Commission, which so plainly are regarded and intended by the parties as the guide to be followed in making the improvements upon the leased premises.

Objection is made that the recommendations in the commissioners' report for an open space at the west end of the beach and for a "trolley's terminus" are not followed in Mr. Upjohn's plan. This objection overlooks the fact that both of these matters are not within the control of the lessee, and relate to the development of portions of the beach outside the demised premises, and on land over which the city retains control. The difference between the recommendation of the commission and the Upjohn plan with regard to the width of the boardwalk in front of the private bathing houses appears to us to be of minor importance and does not constitute a substantial departure from the recommendations of the commission. The plan for sewage system contained in the proposal follows verbatim the language of the recommendation of the committee, and we fail to understand the ground of the objection.

The appeal of the complainants is dismissed. The appeal of the respondents is sustained and the decree appealed from is reversed.

On July 7, 1923, at nine o'clock, a. m., Standard time, the parties may present a form of decree in accordance with this opinion.

*Gardner, Moss & Haslam, William W. Moss, Thomas F. Black, Jr.,* for complainants.

*Jeremiah F. Sullivan, Frank F. Nolan, Sheffield & Harvey,* for respondents.