**UNITED STATES v. MUNTZING.**

Civil Action No. 82–E.

District Court, N. D. West Virginia.

Dec. 12, 1946.

Joe V. Gibson, U. S. Atty., of Kingwood, W. Va., and Howard Caplan, Asst. U. S. Atty., of Clarksburg, W. Va., for plaintiff.

L. Baker Fowler; of Elkins, W. Va., for defendant.

BAKER, District Judge.

The facts in this case have been stipulated, and I now find them to be as follows:

William Lee Conard executed his promissory note, payable to the Secretary of Agriculture, in the amount of $200, on April 1, 1932. The note bore interest at 5½ per cent per annum, and was payable November 30, 1932. This note was secured by a chattel mortgage on certain crops. The chattel mortgage was recorded in the Office of the County Clerk of Hampshire County, West Virginia. William Lee Conard actually lived and had his residence in Hardy County, West Virginia. There was never any recordation of this lien in Hardy County, Mr. Conard's residence. It may be noted in passing that the note was actually executed in the name of William Lee Conrad. However, this point is immaterial since it is admitted that it was an obligation of Mr. Conard's. By proper Executive Orders, the Governor of the Farm Credit Administration became a successor to the Secretary of Agriculture as obligee of this note, and all the title and interest which the Secretary of Agriculture ever had became duly vested in the Govern-

or of the Farm Credit Administration. Partial payments were made upon the note, but it was never discharged in full.

On June 5, 1937, William Lee Conard died intestate still owing the principal part of the debt created by this note. Shortly thereafter, the defendant, H. Gus Muntzing was duly appointed and qualified as Administrator of Conard's estate, and said estate was referred to C. C. Wise, of Moorefield, Hardy County, West Virginia, as Commissioner of Accounts.

During the administration of Conard's estate it became apparent that his personal property would not be sufficient to pay his debts, and on August 25, 1937, Muntzing, Administrator, brought a chancery suit in the Circuit Court of Hardy County, West Virginia, to subject the decedent's real estate to the payment of his debts and to settle the estate.

On September 2, 1937, John J. Dillon, Regional Attorney for the Farm Credit Administration, mailed to C. C. Wise, Commissioner of Accounts, of Hardy County, a proof of claim setting out the balance then due upon the note previously executed by Conard, the principal of which as of that date amounted to $188.50. C. C. Wise, Commissioner of Accounts, in turn delivered this proof of claim to Ralph Bean, Commissioner in Chancery, to whom the above-mentioned chancery suit had been referred. The Commissioner in Chancery allowed this claim as a common claim against the Conard estate, and so reported it to the Circuit Court of Hardy County. By order entered February 28, 1938, the Judge of the Circuit Court of Hardy County confirmed the Commissioner's report in this respect.

On March 22, 1938, John J. Dillon, the Regional Attorney for the Farm Credit Administration, who had filed the claim with Wise, Commissioner of Accounts, wrote a letter to Muntzing, Administrator, stating that he had received a letter from the Commissioner of Accounts, advising that the claim had been allowed by the Court and asking when he could expect a settlement thereof. Mr. Dillon had, in fact, been advised by the Commissioner in Chancery as to this matter, but the fact that he confused this latter officer with the Commissioner of Accounts is unimportant.

On March 23, 1938, Muntzing, Administrator, wrote to Mr. Dillon, stating that the claim had been allowed, but adding this language:

"since not any of the property which was secured by a lien were in existance at the time of the death of Mr. Conard, your claim, therefore, becomes a Common Claim against the Estate of William Lee Conard, and a very small percentage will be paid in connection with same."

On July 11, 1938, Mr. Muntzing again wrote to Mr. Dillon, sending him a check in the amount of $29.10, representing a 12% dividend upon the claim in question, and stating "there will be no further disbursements in connection with same."

On October 25, 1938, the Judge of the Circuit Court of Hardy County entered a decree approving the report of the Administrator, which report set forth, among other things, the $29.10 payment of this claim.

On October 20, 1939, Mr. Dillon again wrote to Mr. Muntzing acknowledging receipt of the payment of $29.10, but stated that the claim should have been allowed in full since it was entitled to priority under Title 31, U.S.C.A. § 191.

On September 13, 1940, this action was instituted to recover from H. Gus Muntzing individually the sum of $237.68, with interest from September 10, 1940.

The Court finds as a matter of law:

(1) This Court has jurisdiction of the subject matter and of the parties herein.

(2) The Circuit Court of Hardy County, West Virginia, had jurisdiction of the Estate of William Lee Conard, Deceased.

(3) The claim arising under the note executed by William Lee Conard was a claim of the United States Government and, as such, was entitled to any priority properly allowed by the United States Code Annotated, Title 31, § 191, Revised Statute § 3466.

(4) The United States appeared in the State Court in such a manner as to make the order of that Court binding upon the United States.

(5) Judgment should be entered for the defendant.

## Comment.

While for a time there was considerable doubt whether or not a claim such as we have here represented a claim by the United States and as such came under the provisions of Title 31 U.S.C.A. §§ 191 and 192, the Supreme Court decision in the case of United States v. Emory, 314 U.S. 423, 62. S.Ct. 317, 86 L.Ed. 315, settled this point. There is now no doubt that this is a claim by the United States. The Statute in question has received a broad interpretation, and properly so, since it is designed to protect the revenue of the Government, without which revenue the Government can not function. However, in instances of this kind, the law now seems well-settled that where the Government has a claim against a decedent's estate or, for that matter, against any fund being administered in a state tribunal, it may adopt either one of two courses. First, it may content itself with notifying the Administrator of the existence of the claim, and then rely upon the provisions of the above mentioned Statute to assure the claim being allowed its proper priority; or, it may appear in the state tribunal and prosecute its claim as any other litigant in that tribunal. If the Government adopts the latter course, it is bound by any decision of the State Court.

A well-considered case on this point is that of United States v. Pate, D.C., 47 F. Supp. 965.

In the present case there is no question but that the Administrator knew of the existence of the claim in the State Court. While the point is immaterial, there is actually no doubt that the Administrator knew of the asserted priority in favor of the Government, or at least should have known thereof because the letter transmitting the Government's claim to the Commissioner of Accounts specifically referred to the Federal Statute and specifically asserted priority. This fact, however, is no protection for the Government if it did in contemplation of law submit itself to the jurisdiction of the state tribunal. This is virtually admitted by the Government's Brief, which uses the language "Probably the controlling issue of the instant case is whether or not the United States was a party to the chancery suit which the administrator instituted in the Circuit Court of Hardy County, West Virginia." The Government then contends that it was not a party to such suit and, in support of such contention, advances three principal arguments. It says, first, that it was not a party to the State Court suit because it was not named as a formal party therein; second, that no one ever purported to appear therein for the Government since the Farm Credit Administration filed its claim with the Commissioner of Accounts and not in the chancery suit; and third, that only the Attorney General of the United States, or some one authorized to act for him, can bind the Government by an appearance in Court.

I do not believe any of these contentions are tenable. In the first place, the Farm Credit Administration took exactly the steps that any ordinary creditor would take to prove a claim against a decedent's estate; that is, it filed the claim with the Commissioner of Accounts to whom the estate had been referred. This is the normal and proper procedure under West Virginia State law. It is true that at the time the claim was filed with the Commissioner of Accounts a chancery suit had in fact been instituted, and that neither the Farm Credit Administration nor the United States had been made formal parties thereto. This oversight, no doubt, was caused by the fact that the chattel mortgage was never recorded in the county in which Conard had his domicile and in which his estate was being administered. However, the Farm Credit Administration obviously elected to collect its claim in the State administration of the estate. After the chancery suit was instituted the Commissioner in Chancery reported this claim as a common claim against the estate.

There is nothing in the Stipulation as to whether or not the Commissioner of Accounts complied with the State law and published a proper notice, directing all claimants to file claims with him, nor that the Commissioner in Chancery, when the estate came before him, published proper notice thereof, but we may assume that both

these officers followed the State Statute and practice in this regard, and that such notices were duly published. We know definitely that the Farm Credit Administration in some manner found out that Conard had died, that his estate was being administered in Hardy County; and that it had been referred, in the first instance, to C. C. Wise, Commissioner of Accounts.

Section 4229 of the West Virginia Code [44-8-7] is pertinent wherein, in connection with the settlement of estates by a chancery suit, it provides:

"In every suit under this section anyone claiming to be a creditor of the decedent, whether he may have been made a party thereto or not, or whether he may have been served with process therein or not, may present his claim, and, upon such presentation, shall be deemed to have been made a party to the suit and to have been served with process therein."

■ I hold, therefore, as a matter of law that when the Government filed its claim with the Commissioner of Accounts, it subjected itself to the jurisdiction of the state tribunal and was bound by any decision therein.

■ This leaves only the one question and that is whether or not John J. Dillon, Regional Attorney, or the Governor of the Farm Credit Administration, could make the United States a party to the State Court proceeding. It is contended by the Government that only the Attorney General, or some one acting under his authority; that is, one of his assistants, or the United States Attorney, or his assistants, can bind the United States by an appearance in Court. This was undoubtedly, at one time, the law and, in my judgment, the law should never have been changed.

I feel that Judge Learned Hand, of the Second Circuit Court of Appeals, in the case of Sutherland, Alien Property Custodian, v. International Insurance Co. Of New York, 43 F.2d 969, clearly stated the whole law upon this subject, and had this matter come before me at the time the Sutherland case was before Judge Hand, I would unhesitatingly have held that only the Attorney General or the United States Attorney has authority to appear for the Government in Court. However, we are confronted by the fact that in recent years the Government has been in Court innumerable times represented by attorneys having no connection whatever with the Department of Justice. It is only a matter of months ago when over half the cases upon the Civil Docket of this Court were actions involving alleged violations of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., in all of which the Government was the actual plaintiff, although the suits were brought in the name of the Administrator of the Office of Price Administration, and in all of which the plaintiff was represented by counsel wholly outside of and in no way answerable to the Department of Justice. We saw the same situation in regard to proceedings brought under the Fair Labor Standards Act, under the Wage and Hour Law, 29 U.S.C.A. § 201 et seq., and under various other Federal Statutes. In fact, it has gotten to the place where it is the exception, rather than the rule, to have the United States Attorney counsel for the Government in a civil action. Even the Farm Credit Administration, the Government Agency with which we are here concerned has, in the past, appeared in this Court, not represented by the United States Attorney, but by its own counsel; in fact, by the very John J. Dillon who filed the claim here in controversy. Under these circumstances, to say that Mr. Dillon, or, for that matter, any one except the United States Attorney, or the Attorney General, can not bind the Government by an appearance in Court is simply to fly in the face of all the facts and present-day precedent. The whole rule has simply been changed apparently by general consent of the Courts and the Government. If the United States is to be permitted to appear in this Court represented by counsel other than the United States Attorney and secure relief against citizens of this country in the form of money judgments, injunctions, etc., it can not then come into Court and assert that only the Attorney General, or some one connected with the Department of Justice, has the authority to represent it.

For this reason I have held that the Government was, in fact, a party to the State

Court litigation in Hardy County, West Virginia, and was bound by the result thereof.

Judgment may be had for the defendant.