CITY OF FORT WORTH et al., Appellants,

v.

Don BARLOW et al., Appellees.

No. 15898.

Court of Civil Appeals of Texas.

Fort Worth.

May 2, 1958.

Rehearing Denied June 6, 1958.

R. E. Rouer, S. G. Johndroe, Jr., John Gano, G. Gordon Whitman, Earl C. Mor-gan, and Robert R. Goodrich, Fort Worth, for appellant City of Fort Worth.

Hill & Paddock and Homa S. Hill (on appeal only), Fort Worth, for appellant Lake Worth Beach Co.

McGown, Godfrey, Logan & Decker, John W. McMackin and Winfred Hooper, Jr., Fort Worth, for appellee Don Barlow.

William P. Rogers, Atty. Gen., of United States, J. B. Engledow, George E. Hughes and Thos. E. Ball, Dallas, and W. B. West III, First Asst. U. S. Atty., Northern District of Texas, Fort Worth, for Intervener, Administrator of Veterans' Affairs.

RENFRO, Justice.

The plaintiff Barlow sued Lake Worth Beach Company for injuries sustained when he dived from a swing diving device constructed by Beach Company in Lake Worth, and sued the City of Fort Worth as owner in fee of the property where the accident occurred.

The jury found that the depth of the water where the swing was located created an inherently dangerous condition for diving purposes; Beach Company was negligent in failing to warn plaintiff of the depth of the water, in allowing the public to use the swing device, in failing to move the device to deeper water, and in failing to deepen the area in front of the swing; that the city was negligent in failing to inspect the area and inform plaintiff of the depth of the water and in allowing the swing device to be open to the public. Each of the above acts of negligence was found to be a proximate cause; that the inherently dangerous condition existed for a sufficient length of time to have been discovered by both defendants, that the inherently dangerous condition was a proximate cause. All issues on contributory negligence were answered favorably to plaintiff.

The extent of the injuries sustained by plaintiff is not questioned. At the time of

the injury he was 23 years of age with a life expectancy of 47 years. The evidence showed that his spinal cord was severed by a shearing motion of the sixth and seventh cervical vertebrae. He was completely paralyzed from the shoulders down. The paralysis will be permanent. The total paralysis had a degenerative effect on almost every part of his body. He has a slight motion with his arms, but his hands are useless. He has lost control of his kidneys, bladder and bowel functions. He must wear a catheter. He is subject to involuntary muscle spasms. In his present condition he has a probable life expectancy of 24 to 30 years. He will require medical treatment every year as long as he lives. He will require constant nursing as long as he lives. According to medical testimony, plaintiff is unable to do anything for himself and someone will have to take complete care of him twenty-four hours per day. There was considerable evidence as to past pain and suffering and probable future suffering.

In answer to issue No. 37 the jury found that for past and future pain and loss of earnings, past and future, $103,760 would reasonably and fairly compensate plaintiff. In answer to No. 37–B the jury found that in reasonable probability plaintiff would reasonably and necessarily incur in the future $110,000 for nursing care, $9,000 for doctors' bills, and $18,000 for medicine. The judgment entered also allowed the intervener, Administrator of Veterans Affairs, the sum of $7,485.65 for services rendered plaintiff prior to trial.

The defendant Beach Company in its first three points of error, briefed as a group, contends the court erred in (1) overruling its plea in abatement and in permitting plaintiff and intervener to recover for damages in which the United States had an interest; (2) submitting issues on medical, hospital, nursing, doctor's and other expenses in favor of either plaintiff or Veterans Administrator; (3) instructing defendant to "in no way before the jury

allude to or to attempt to prove that the plaintiff is or might be entitled to receive free hospitalization or medical treatment from the U. S. Government after the date of this trial."

The Administrator of Veterans Affairs, by virtue of an assignment from plaintiff, intervened in the suit on behalf of the Veterans Administration for cost of medical services rendered plaintiff subsequent to the injury and prior to the trial. Beach Company filed a plea in abatement on the ground the Administrator was not a proper party, but that the United States was a proper and necessary party. The plea in abatement was overruled.

George E. Hughes, Assistant Chief Attorney with the Regional Office of the Veterans Administration, testified that he and Thomas E. Ball as attorneys for the Veterans Administration filed the plea in intervention; that Ball acted in his official capacity as a representative of the United States Government; that they had specific letter of instruction from their General Counsel in Washington to intervene; that for the last five years his office had functioned as attorneys for the Veterans Administration and through it for the United States of America in the state courts of Texas and the authority so to act had never been questioned. A letter addressed to Thomas Ball, Chief Attorney, Veterans Administration, Regional Office, Dallas, Texas, signed by Heard L. Floore, United States Attorney, was introduced. In the letter Mr. Floore authorized Mr. Hughes and Mr. Ball to enter an appearance on his behalf and take such further action as necessary to protect the United States Government in the proceedings. Attached to the Floore letter was a telegram from Russell Chapin, Chief Veterans Affairs, Section Civil Division of the Department of Justice, requesting Floore to make the above authorization.

█ We think the foregoing is sufficient authority for the named attorneys to repre-

sent the Government. United States v. Hall, 9 Cir., 145 F.2d 781; United States v. Muntzing, D.C., 69 F.Supp. 503. The participation of attorneys with authority to "take such further action as is necessary to effectively protect the interest of the United States Government," and their acquiescence in the action of the trial court in granting judgment for the administrator were sufficient to bind the United States Government, even though it was not specifically named as a party, and there is no danger that Beach Company will be subjected to double liability for the amount of the judgment rendered for the Administrator.

It is of interest to note in passing that the brief filed in this court for intervener is signed William P. Rogers, Attorney General of the United States, by W. B. West III, First Assistant United States Attorney, Northern District of Texas, and bears above the same signature this statement:

"The United States of America by the undersigned hereby adopts the foregoing brief as that of the United States of America, and further, expressly adopts the brief of Don Barlow, Appellee, in the above entitled and numbered cause.

"It is further stated that the United States of America was represented in the trial of this cause by duly authorized attorneys; that the interest of the United States of America in this proceeding is fully represented by the intervention of the Administrator of Veteran's Affairs functioning in his official capacity as a representative of the United States of America; that the United States of America has by such intervention voluntarily submitted itself to the jurisdiction of the courts of the State of Texas; and that the United States of America is fully and completely bound by any judgment rendered in this cause by the courts of the State of Texas."

While we of course are not bound by the conclusions of the Attorney General of the United States, we have quoted the above because it concisely sets forth our view in regard to the status of the parties herein. We think all parties who had an interest in the cause of action were in court in such a manner that the judgment rendered was conclusive of the rights of all parties who owned or might own an interest therein to the extent that Beach Company can not be compelled to twice pay for the medical services rendered by the Government. Morales v. Roddy, Tex. Civ.App. 250 S.W.2d 225.

We overrule Beach Company's point of error to the effect that the court erred in overruling its plea in abatement.

■ Next we consider Beach Company's point leveled at the allowance of judgment for the intervener for the services rendered prior to the trial.

Plaintiff was a veteran, qualified for medical service in a Government hospital by virtue of Title 38 U.S.C.A. § 2501 et seq. He was not charged for the services, but assigned his claim for medical services to the time of the trial to the Administrator.

In 13 Tex.Jur., p. 248, sec. 133, the rule is pronounced, "An exemption from liability for the expenses of medical treatment cannot be successfully claimed by the defendant on the ground that the services were voluntarily and gratuitously rendered, the reason being that the gratuity is for the benefit of the injured person and may not be claimed by the one who caused the injury." To the effect is Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 183 F.2d 548, 21 A.L.R.2d 266.

In Plank v. Summers, 203 Md. 552, 102 A.2d 262, 266, the question before the court was whether the plaintiff was entitled to the reasonable value of hospital and medical services rendered to him without

charge by a navy hospital. The court, after citing many cases, held: "It therefore appears that the majority of the cases hold that where hospital and medical services are furnished gratuitously to the injured party, he can recover the value of those services from the tort-feasor. This seems to be the modern rule. Here also it might well be considered that medical and hospital services supplied by Government to these members of the United States Navy were part of the compensation to them for services rendered, and therefore that by their service in the Navy they had paid for these. If, by their services, the appellants paid for the medical and hospital expenses, certainly the value of these are proper items for the jury to consider in arriving at the amount of damages * * *." Soon thereafter, in Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344, 347, in commenting on the Plank case, it was said: "We see no reason to distinguish services rendered by a naval hospital to the *veteran* * * * from services rendered by a naval hospital to a man still in the Navy. They are neither more nor less gratuitous, and neither more nor less a part of the injured man's compensation for his service in the Navy, in the one case than in the other." (Emphasis added.) The court held the damages for plaintiff should have included the value of all reasonably necessary medical and hospital services furnished without charge by Bethesda Naval Hospital.

In United States v. St. Paul Mercury Indemnity Co., 8 Cir., 238 F.2d 594, 597, the court refused recovery to the Government on an insurance policy in which the Insurance Company was obligated to pay the insured for expenses actually incurred by the insured. The court pointed out, however, that the question of the right of the veteran to give and the Administrator to accept a voluntary assignment of such a right, whether done on the veteran's own initiative or on the Administrator's request, "is a different matter," and cites Montgomery Ward & Co. v. Furlong, 10 Cir., 219 F.2d 726, as impliedly giving recognition to such a right in the Administrator.

Plaintiff could have recovered for the value of such services from the Beach Company. He assigned that right to the Intervener Administrator. This he had a right to do. 38 U.S.C.A. § 3801. The court correctly held Beach Company to be liable to the intervener for the value of the services rendered.

■ We also overrule Beach Company's contention the court erred in instructing the defendant not to refer to or attempt to prove that plaintiff is or might be entitled to free hospitalization from the Government after the date of the trial.

No abatement of damages on the ground of partial compensation can properly be made where the evidence shows funds have been received from a collateral source, independent of the defendant. The defendant is not relieved from his duty of paying for the necessary and reasonable expense of medical attention although the services have been gratuitously rendered. 13 Tex.Jur., p. 180, sec. 80, p. 248, sec. 133.

Uncontradicted testimony of two reputable and competent physicians shows that plaintiff is permanently disabled, that as long as he lives he will be helpless; they testified to the probable, reasonable medical treatment he will require and the reasonable cost thereof; they, or at least one of them, testified to the necessity of constant and permanent need of nursing care. A qualified witness testified as to the daily wages of registered and practical nurses.

■ Plaintiff was entitled to a finding of probable, reasonable cost of such services in his home county. It is his option, not Beach Company's, as to whether he will spend part of the future in veterans hospitals or whether he will live at home where such necessary services, according to the evidence can be rendered. Since,

in no event, can Beach Company claim, in mitigation of damages, that plaintiff might receive cheaper care, or even gratuitous care in a veterans hospital, it was not error to exclude evidence that he might spend part of his time in a veterans hospital.

Point 4 of Beach Company goes to an instruction given in connection with Issue No. 4 of the court's charge.

Said issue and instruction read as follows: "Do you find from a preponderance of the evidence that the danger, if any, of a person striking his head on the bottom of the lake at the point where plaintiff, Barlow, dived on the occasion when he was hurt was not so open and obvious that plaintiff Don Barlow should have realized such danger, if any, before he left the swing upon the occasion in question? In connection with the foregoing issue, you are instructed that the plaintiff, Don Barlow, was under no duty to make an inspection of the water in front of the swing. Plaintiff * * * could not close his eyes to obvious dangers, or to dangers that he knew of, but he had a right to assume that the premises were safe for his use for normal diving purposes, unless he knew of such dangers, or unless they were open and obvious." The jury found that the danger was not open and obvious.

Beach Company contends the instruction in effect told the jury plaintiff had no duty to keep a proper lookout and to exercise any care.

Issue No. 51 inquired if the plaintiff on the occasion failed to keep such lookout for his own safety as would have been kept by a reasonably prudent person under the same or similar circumstances. The jury found that plaintiff did not fail to keep a proper lookout.

Plaintiff, being a business invitee, was owed a duty by Beach Company to use reasonable care to make and keep the premises reasonably safe for plaintiff's use, including the duty to warn him of dangers which were not obvious, reasonably apparent or as well known to plaintiff as they were to Beach Company. Smith v. Henger, 148 Tex. 456, 226 S.W. 2d 425, 20 A.L.R.2d 853; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497. A plaintiff's right to recover cannot be defeated on the theory that he assumed the risk of injury under the doctrine of volenti non fit injuria unless it appears that with full knowledge of the nature and extent of the danger involved he put himself in the way of the particular risk involved as the result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172; Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60.

According to the evidence, plaintiff had made previous forward dives from the swing. He had never touched bottom. He did not know how deep the water was in front of the swing. No one warned him of the depth of the water, or said anything about its depth. On the occasion of his injury he, for the first time, turned loose of the swing and dived facing the platform. An "inward" dive is a basic dive taught beginners and it is normal and customary to do such a dive from a swing. It is a, standard dive, but dangerous in shallow water. Beach Company had in the past dug out the diving area at other appliances but had not deepened the area where the swing was located. The waters of Lake Worth are continuously muddy and murky to such an extent that, at the place of the accident, the bed of the lake could not be seen. The testimony as to the depth one could see into the water varied from a few inches to one and one-half, or two feet.

The ordinary invitee can presume that the premises are safe and it is not his duty to search the things offered for

defects. Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357.

It is said in Gates v. Gautier, 29 Cal. App.2d 524, 85 P.2d 141, 142, in a case involving a diving injury, "It was the duty of defendant to use reasonable care for the safety of his patrons in view of the use of the premises that might reasonably be anticipated. Plaintiff as a patron of the bathing resort had the right to assume that defendant had discharged his duty and had provided a place which was reasonably safe. He was not required to make a critical inspection."

And in Louisville Water Co. v. Bowers, 251 Ky. 71, 64 S.W.2d 444, 446, the court held: "* * * a patron of a place of public amusement for hire is not obliged to make a critical examination of the premises to determine whether they are safe, but has a right to assume that those in charge have provided a safe place and taken the proper precautions for his safety, * * *." For a like holding, see Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696.

In McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 395, the court, speaking through Judge Calvert, held: "The owner is charged with knowledge of any dangerous condition that a reasonable inspection would have revealed because his duty to keep his premises in a reasonably safe condition for use by his invitees includes a duty to inspect. * * * *There is no such obligation on the invitee. * * * While he may not close his eyes to obvious dangers, he has a right to assume that the premises are safe for his use."* (Emphasis added.)

The trial court apparently took the instruction given with issue No. 4 from the above case, and under the facts and circumstances of the instant case, such instruction was not erroneous.

During the progress of the trial four snapshot photographs of plaintiff taken before the accident were introduced in evidence. In three of the pictures one or more unidentified persons are also shown. Beach Company objected to the admission of the pictures on the ground that how plaintiff looked before the accident was not an issue in the case and could only serve to inflame and prejudice the jury. Plaintiff offered them for the purpose of showing the condition of health of plaintiff before the accident, whereupon Beach Company offered to stipulate that plaintiff's general health was excellent before the accident. Plaintiff did not accept the proffered stipulation but proceeded to introduce and exhibit the pictures.

The trial judge is accorded considerable discretion in ruling on the admission or exclusion of photograph evidence. McCormick and Ray, Texas Law of Evidence, Vol. 2, pp. 320–1. We have viewed the pictures of which complaint is made. In our view, there was nothing about the pictures which would have persuaded a juror of ordinary intelligence to agree to a verdict contrary to what he would have agreed to if the pictures had not been in evidence. In the light of the entire record, the admission of the pictures, even if error, was not such error as was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Believing that none of Beach Company's five points present reversible error, they are each overruled.

The City of Fort Worth in its first group of points urges the court erred in overruling its motion for instructed verdict, its motion for judgment and its motion for judgment non obstante veredicto, because the accident occurred on property in the possession and control of the Beach Company, and the city having leased same to Beach Company, the city owed the plaintiff no duty for which liability for damages could be predicated, it having no possession and control of said premises.

The plaintiff counters that the liability of the city is that of a landowner and not that of a landlord; the waters and bed of Lake Worth where plaintiff was injured were not covered by the written lease with the Beach Company; that the city had no authority to lease the bed or waters of Lake Worth, the lease did not in fact cover any of the bed or waters of the lake, that the bed and waters of the lake were not leased to Beach Company by implication; that in any event the city is liable to plaintiff under the holding of Scroggins v. City of Harlingen, 131 Tex. 237, 112 S.W.2d 1035.

City and Beach Company entered into an agreement as lessor and lessee on April 27, 1949. The agreement described "That certain tract of land known as Tract No. 2 upon the west shore of Lake Worth, consisting of approximately 10 acres of land, being bounded on the east by the Lake shore, on the south by the Old Nine Mile Bridge Road, on the west by Meandering Road, and on the north by the tract of land leased to New Casino * * *." The lease was for a term of 10 years and 7 months. In paragraph 3 the lease stated, "It is contemplated by the parties that Lessee will operate a *swimming beach* on said premises and, in connection therewith and as *incidental* thereto, provide a picnic area, facilities for dispensing food and soft drinks, and install and operate amusement rides and other amusement devices." Paragraph 4 provided for a minimum rental of $1,000 per year, plus certain percentages of receipts. In paragraph 5 the lessee, among other things, agreed to construct a suitable *swimming dock,* install suitable and adequate lights and other equipment necessary to maintain and operate a *swimming* beach, as soon as satisfactory arrangements could be made to enlarge and improve the amusement and *swimming facilities* so as to make the area an outstanding amusement and *swimming center*. In paragraph 6 lessee agreed to comply with all the ordinances of the city and obey all orders and requirements of the Public Health and Police Departments of the city. In paragraph 9 the lessee obligated itself to provide adequate policing and supervision, provide adequate life guards to safeguard the welfare of persons using the *swimming* facilities contemplated. Paragraph 13 provided that lessee "shall peaceably hold and enjoy the said herein demised premises without hindrance or interruption by the said Lessor." (Emphasis added.)

The lease was in effect at the time of plaintiff's injury. The swing in question was erected by Beach Company about four years after the execution of the lease. After the effective date of the lease, Beach Company marked off a swimming area with barrel floats, constructed a pier within that area, constructed slides, a diving board and the swing platform. The city never questioned the use of the enclosed swimming area, and, in fact, neither Beach Company nor the city ever had any disagreement or argument as to the right of the Beach Company to make use of the swimming area so marked, or as to the extent conveyed by the lease.

The record shows that the city did not retain any power (except such authority as the Health and Police Department possessed) or authority over the premises, including the swimming area, and never attempted any supervisory power over the premises. As heretofore mentioned, the lease contract provided that Beach Company should hold the premises without hindrance or interruption by the city.

It is evident by the terms of the lease that the intention of the parties was that Beach Company would make the area an outstanding swimming center. At least six times the lease referred to swimming or swimming facilities. Obviously, the swimming facilities and swimming center were not to be and could not be located on the dry land described by metes and bounds in the lease. When the parties to the lease referred to swimming dock, equipment necessary to maintain and op-

erate a swimming beach, improving the swimming facilities to make the area an outstanding swimming center, life guards, etc., they surely intended that Beach Company would use so much of the waters of the lake as reasonably necessary to carry out such obligations.

■ A lease may be created by words or other conduct expressing consent to the lessee's possession. The conduct expressing consent may consist merely in a failure to object to the presence of one who has entered without the lessor's consent but not adversely to him. American Law Institute, Restatement of the Law of Torts, Vol. II, p. 966, sec. 355. In the instant case, the city did not object to Beach Company's occupancy of the enclosed swimming area, but acquiesced therein. It is said in 27 Tex.Jur., p. 47, sec. 3: "An occupant of real estate may be found to have been the tenant of the owner of the property although there appears to have been no express contract between them either written or oral, and although the occupant may not have agreed or become obligated to pay rental or other consideration." Here we have a landowner and a lessee who actually treated the lease for more than seven years as creating a landlord and tenant relationship as to the swimming area. Here we not only have the language in the lease specifying that the lessee was to do certain things in the lake, which would necessarily carry with it possession, but undisputed evidence that the city, both by agreement in the lease and by conduct, agreed that it would not interfere with plaintiff's possession. In 6 C.J.S. Appurtenance p. 136, the rule is stated, "land can never be an appurtenance to land; but where from the context and the facts of the particular case an intent to pass land is manifest, the courts will heed the intent and the land will be treated as an appurtenance."

■ In the case before us, from the context of the lease and the undisputed evidence in the record, we are compelled to the conclusion that the intent of the parties was to, and did, pass to Beach Company as tenant, the area adjacent to the land used as a swimming area. See Howeth v. Anderson, 25 Tex. 557, wherein it is held that leases are construed so as to give effect to the intention of the parties, with regard to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time, and intended to accomplish.

■ The practical construction placed upon a contract by the parties themselves constitutes the highest evidence of the intention of the parties that whatever was done by them in the performance of the contract was done under the terms of the contract as they understood them, and as under the terms of the contract it was intended to be done. Cooley v. Buie, Tex. Com.App., 291 S.W. 876; 12 Am.Jur., p. 787, sec. 249; Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566.

In view of the lease and the undisputed evidence in the record, we conclude the lease included the swimming area. To hold otherwise would make the lease, to a large extent, meaningless. If Beach Company did not acquire right to the swimming area under the lease, then one, if not the most important, object of the very lease—to develop an outstanding swimming center—could not be accomplished.

■ Generally, when a thing is granted, everything essential to its beneficial use and enjoyment is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing by the conveyance. Grogan v. City of Brownwood, Tex.Civ.App., 214 S. W. 532.

As we have seen, the language of the lease did not exclude the swimming area, but indicated that the swimming area was considered as passing under the lease with the shoreland.

■ A municipality may lease land under water where it is the owner of such land, provided such a lease is in the public interest, and the lease may, in a proper case, be for private purposes. 65 C.J.S. Navigable Waters § 108, p. 232.

The city charter gives to the City of Forth Worth the right to acquire property in fee simple, and to sell or lease such property. The charter also gives the Park Board management of lakes and empowers such Board, with the approval of the City Council, to lease lands belonging to said Department.

The Supreme Court of Rhode Island, in Cascambas v. City of Newport, 45 R.I. 343, 121 A. 534, 536, held: "Without question the city would have authority to establish reasonable regulations concerning the public use and enjoyment of the beach, and the city might make a lease of a portion of the beach if the public were not excluded therefrom, and the purpose and effect of such lease was the furtherance of the public use for which the beach is held. This is in accord with reason and is supported by ample authority."

In Macdonell v. International & G. N. Ry. Co., 60 Tex. 590, the City of Laredo was possessed of certain ferry franchises, ferries and lands upon which it was empowered by charter to establish ferries across the Rio Grande. Said the Supreme Court in passing on the validity of a lease of the above by the City of Laredo to an individual: "If the City of Laredo owned the land on which the ferry or ferries were established, and the boats and appurtenances to the same, as well as the franchise to operate the ferries, then it was clothed with the attributes of ownership and might do with such property what a private person might do, restricted only by the fact that as a municipal corporation * * * it could not surrender its control and supervision of such property into the unrestricted management and control of some other person. If, however, it reserved and exercises a control and super-

vision over the ferries through its own ordinances, as it would have done and was required and authorized to do for the public good, had it operated the ferries through its own servants, then it is not perceived that a contract made by the city by which some other person was authorized to operate the ferries, paying a sum to the city for the right to do so, would be illegal."

In the instant case the lease contract provided the Beach Company would comply with all the ordinances of the city and the laws of the state and nation applicable to said premises, and would obey all orders and requirements imposed by the Health and Police Departments of the city.

In Christopher v. City of El Paso, Tex. Civ.App., 98 S.W.2d 394, it was held that the terms of the statute authorizing cities to acquire municipal airports do not prohibit leasing such airports by cities to others.

■ In the light of the law, as followed in the above cited cases, the city had the legal right to enter into the lease contract with Beach Company. The lease obligated the Beach Company to do, in the public interest, what the city could have done through its own servants. The lease was not illegal. Macdonell v. International & G. N. Ry. Co., supra.

The plaintiff relies strongly on Scroggins v. City of Harlingen, 131 Tex. 237, 112 S. W.2d 1035, 1041. The opinion of the Supreme Court therein shows a marked fact distinction to the instant case. We call attention specifically to paragraph 5 of the court's opinion, wherein the court said: "This record clearly shows that, by virtue of the provisions of its charter, the city maintained a chamber of commerce for certain purposes, one of which was to operate a fair in its park, for the purpose of advertising the advantages of the City of Harlingen. It clearly appears that the chamber of commerce was a branch of the city government, and that its secre-

tary, A. L. Brooks, was acting for the benefit of the city in the performance of his duties." Without enumerating them, we think the above, and the other distinctions as shown in the opinion in the Scroggins case, renders that case so different on the facts as not to be decisive herein. In City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516, where the controlling question was whether or not the City of Tyler was liable for injuries caused by the collapse of bleachers erected by Texas Rose Festival Association in a city owned park, where the city had agreed to the erection of such bleachers, but over which it had no control, the court, speaking through the same Justice who wrote the Scroggins opinion, pointed out the Rose Festival Association was not a part of the city charter. The court concluded that while the city permitted the Rose Festival to use part of the park, and the Festival built defective bleachers thereon and charged an admission fee, the city was not liable for injuries sustained by third parties. A careful study of the two above cases leads us to the conclusion that the Tyler case is applicable to the case before us.

■ In our opinion, the record shows conclusively that the city and Beach Company were in the position of landlord and tenant at the time and place of the unfortunate accident. If that relationship did exist, then there is no doubt the city was not liable to plaintiff for the injuries sustained.

■ Where there is no agreement by the landlord to repair the demised premises and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety and the landlord is not liable to him or to *any other person* entering under his title or by his invitation for injury caused by their unsafe condition. Morton v. Burton-Lingo Co., 136 Tex. 263, 150 S.W.2d 239; Perez v. Raybaud, 76 Tex. 191, 13 S.W. 177,

7 L.R.A. 620; Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369.

There were no defects when the city leased the premises to Beach Company. The offending swing was erected several years after the execution of the lease and the occupancy of the area by Beach Company. There was no agreement by the city to build or maintain swimming devices. The Beach Company controlled the area, subject to observance of city ordinances, without the right of the city to interfere with its management of possession.

Believing that the lease and undisputed evidence established the relationship of landlord and tenant between the city and Beach Company, and in the absence of any fraud or concealment of any defective conditions by the city, the plaintiff failed to show any liability of the city for his injuries. The motion for instructed verdict by the city should have been granted. Accordingly, we reverse the judgment of the trial court in so far as judgment was rendered against the City of Fort Worth, and here render judgment that both plaintiff and intervener recover nothing from the city.

The city has presented a voluminous number of points of error. In view of our holding under the first three points that the city is not liable, it is really unnecessary to pass on the remaining points. The plaintiff, however, tried the case on the theory that the liability of the city is predicated on its ownership and control of the premises where plaintiff was injured. Realizing that the Supreme Court may determine that we are in error in holding the city exempt as a landlord, we have given careful attention to all the city's points of error. Assuming that the city was not exempt from liability, then we see no reversible error in the other points raised by the city. Under the theory of ownership and control, the court adequately and fairly presented the case to the jury. We overrule all of the city's points of

error, except the first three, and except for our action in sustaining such points, would affirm the judgment against the city.

 Through error, the judgment allowed the intervener $365.80 more than the evidence warranted. The judgment in favor of the intervener against Beach Company is reformed by deducting $365.80 from the amount awarded by the court, and, as reformed, is affirmed.

The judgment in favor of plaintiff against Lake Worth Beach Company is affirmed.

The judgment for intervener and plaintiff against the City of Fort Worth is reversed and judgment rendered that both intervener and plaintiff recover nothing against the City of Fort Worth.