**ODESSA TEXAS SHERIFF'S POSSE, INC., Appellant,**

v.

**ECTOR COUNTY, Texas, Appellee.**

No. 11–05–00309–CV.

Court of Appeals of Texas,
Eastland.

Oct. 26, 2006.

Spencer W. Dobbs, M. Michele Green, Odessa, Chad Weaver, Midland, for appellant.

Mike Atkins, Kevin B. Laughlin, Atkins, Peacock & Lewis, L.L.P., Odessa, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a declaratory judgment and inverse condemnation action. The trial court entered a take-nothing judgment in favor of Ector County, Texas. We affirm in part and reverse and remand in part.

### I. *Background Facts*

In 1954, an organization known as the Ector County Sheriff's Posse leased approximately seventy-nine acres of land from Ector County for a term of ninety-nine years for $10. The organization was a riding club created to promote a love of horses and good horsemanship, to promote and maintain rodeos, and to serve as goodwill ambassadors for Odessa and Ector County by participating in rodeo events. Ector County Sheriff's Posse took possession of the property and began building improvements.

In 1959, the posse incorporated itself as "The Ector County Sheriff's Posse, Inc." In 1963, the secretary of state dissolved the corporation for failing to pay franchise taxes. In 1986, the Ector County Sheriff's Posse, Inc. was again incorporated. In 2003, the organization changed its name to "The Odessa Texas Sheriff's Posse, Inc." because the prior name had been taken by former posse members.

The leased property was occupied continuously from 1954 and was used for a variety of purposes including rodeos and barbecues. It was made available to law enforcement agencies for training and to other charitable, religious, and educational groups for their use. Over the years, sub-

stantial improvements were added to the property, including barns, horse stalls, a clubhouse, an arena, water wells, septic tanks, a horse walker, concession stand, and restrooms. By 2005, the property's improvements were estimated to be worth approximately $300,000.

In 1999, Ector County decided to extend and widen a runway at Schlemeyer Field to make the airport more accessible for larger aircraft that were being forced to use other facilities. Texas Department of Transportation officials required the removal of the leased property's improvements because they were located in the safety apron of the expanded runway. Ector County and Odessa Texas Sheriff's Posse engaged in negotiations to relocate the group. The parties could not reach an agreement, and Ector County ordered the group to vacate the property. Odessa Texas Sheriff's Posse filed an inverse condemnation and declaratory judgment action. Both parties filed motions for summary judgment. Ector County also filed a motion to dismiss for lack of standing. The trial court denied Odessa Texas Sheriff's Posse's motion, granted Ector County's traditional motion for summary judgment,[1] granted Ector County's motion to dismiss, and entered a take-nothing judgment in its favor.

### II. *Issues*

Odessa Texas Sheriff's Posse challenges the trial court's judgment with five issues. Odessa Texas Sheriff's Posse argues in its first two issues that the trial court erred by not finding that it has standing as a matter of law or, alternatively, by not finding that a question of fact exists on its standing. It argues in its third issue that

---

1. Ector County also filed a no-evidence motion for summary judgment. The trial court denied that motion as moot.

summary judgment was improper because a question of fact exists on its inverse condemnation claim. Finally, Odessa Texas Sheriff's Posse contends in issues four and five that it established a violation of the Texas Open Meetings Act as a matter of law or, alternatively, that a question of fact existed on this claim.

### III. *Standard of Review*

■■■ Standing is an element of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* at 446. Whether a court has subject-matter jurisdiction is a legal question that is reviewed de novo. *Ector County v. Breedlove*, 168 S.W.3d 864, 865 (Tex.App.-Eastland 2004, no pet.). When reviewing a plea to the jurisdiction, we consider not only the plaintiff's pleadings but also the evidence before the trial court. *Eastland County Coop. Dispatch v. Poyner*, 64 S.W.3d 182, 196–97 (Tex.App.-Eastland 2001, pet. denied). We construe the pleadings in the plaintiff's favor and look to the pleader's intent. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

The standard of review for traditional summary judgments is well recognized. We must consider the summary judgment evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). A defendant is entitled to summary judgment if it either disproves an element of each of the plaintiff's causes of action or establishes an affirmative defense on each

of the plaintiff's causes of action as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides; we determine all questions presented; and, if we determine the trial court erred, we render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). When a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex.2000).

### IV. *Discussion*
*A. Was the Trial Court Entitled to Make Fact Findings?*

The trial court ruled on the cross motions for summary judgment and Ector County's motion to dismiss for lack of standing in its final judgment and order. The judgment included several findings of fact. Odessa Texas Sheriff's Posse contends that fact findings are inappropriate in a summary judgment context and asks us to ignore them. Ector County contends that we may properly consider the findings because it filed not only a motion for summary judgment but also a motion to dismiss for lack of standing. Because trial courts may properly consider evidence and, thus, make fact findings when determining whether they have jurisdiction, Ector County concludes the trial court's fact findings are appropriate.

■■■ Odessa Texas Sheriff's Posse is correct that findings of fact have no place in a summary judgment proceeding because a summary judgment is appropriate

only if there is no genuine issue of material fact. If a trial court makes factual findings, this indicates a question of fact was present and, therefore, summary judgment was improper. *See IKB Indus. v. Pro–Line Corp.,* 938 S.W.2d 440, 441 (Tex. 1997). However, the Texas Supreme Court has held that, in appropriate circumstances, trial courts may consider evidence and make factual determinations to resolve jurisdictional issues. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex.2004).

*Miranda* involved a personal injury claim for injuries caused by a tree limb falling on the claimant's head. To overcome the Parks and Wildlife Department's sovereign immunity defense, Miranda was required to establish a gross negligence claim. Her petition included a gross negligence allegation. The Department filed a plea to the jurisdiction, which was supported by evidence, and a separate motion to dismiss arguing that there was no evidence of gross negligence. *Id.* at 222. The trial court denied both motions, and the court of appeals affirmed. The court of appeals held that, because the Department did not allege that Miranda's pleading was a sham for obtaining jurisdiction, it was impermissible to consider evidence of the substance of Miranda's claim. *Id.*

The supreme court disagreed and held that a trial court must consider evidence when necessary to resolve jurisdictional issues. *Id.* at 223. If the defendant's jurisdictional challenge is to the plaintiff's pleadings, this is resolved by examining the pleadings. If the challenge is to the existence of jurisdictional facts, then the trial court should consider the parties' evidence. *Id.* at 227.

The supreme court, however, distinguished instances in which the jurisdictional facts also implicate the merits of the case. *Id.* at 226. The court cited with approval decisions in which three federal courts held that, if jurisdictional issues are inextricably bound to the merits of the case, their resolution is for the jury.[2] In that instance, the plaintiff's burden is to show that there is a disputed material fact question regarding the jurisdictional issue. *Id.* at 228.

Consequently, whether it was appropriate for the trial court to make fact findings depends upon whether the issue is jurisdictional, substantive, or inextricably tied to a substantive issue and upon whether the fact finding is germane to the motion to dismiss or the cross motions for summary judgment. This requires that we consider each of the underlying issues separately.

B. *Does Odessa Texas Sheriff's Posse Have Standing to Assert a Takings Claim?*

■■ A plaintiff must have both standing and capacity to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005). Because standing is a prerequisite to subject-matter jurisdiction, *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553 (Tex.2000), unless a standing question was inextricably tied to a substantive claim, it was appropriate for the trial court to consider evidence and make fact findings on standing.[3]

---

2. The court cited *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 n. 3 (1st Cir.2001); *Cameron v. Children's Hosp. Med. Ctr.,* 131 F.3d 1167, 1170 (6th Cir.1997); and *Williamson v. Tucker,* 645 F.2d 404, 413, n. 6 and 416, n. 10 (5th Cir.1981).

3. With respect to standing, the trial court found:
 1. Plaintiff presently is not and has never been a party to the February 27, 1954 lease.
 2. No assignment of any right or interest to or in the February 27, 1954 lease has

A plaintiff has standing when it is personally aggrieved. *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996). The general test for standing in Texas requires that there be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Id.* at 662.

Ector County contends that Odessa Texas Sheriff's Posse lacks standing because it is not a party to the 1954 lease. Ector County presented evidence that, in 1959, the Ector County Sheriff's Posse, Inc. was incorporated and assigned Charter No. 15242900. The corporation's right to do business was forfeited in 1962 for failure to pay franchise taxes; and, in 1963, the secretary of state determined that it had no assets and forfeited its charter. When the organization was incorporated again in 1986, it was issued Charter No. 102008701. Ector County argues that the organization incorporated in 1986 and issued Charter No. 102008701 is a separate and distinct entity from the organization that signed the 1954 lease and, therefore, that it lacks standing to assert a takings claim.[4]

Odessa Texas Sheriff's Posse asserts that it has standing because it has a property interest in the leased premises under one of four theories: lease by conduct; successor in interest; assignment; or estoppel. Each theory relies upon equitable principles because Odessa Texas Sheriff's Posse does not claim that the original corporation formally assigned its interest in

the lease or that Ector County formally recognized its property rights. Because one cannot acquire a property interest adverse to a county by the application of an equitable doctrine, we agree with the trial court that Odessa Texas Sheriff's Posse had no property interest in the leased property.

*1. Lease by conduct.*

In appropriate circumstances, a lease may be created by words or other conduct expressing consent to the lessee's possession. *City of Fort Worth v. Barlow*, 313 S.W.2d 906, 915 (Tex.Civ.App.-Fort Worth 1958, writ ref'd n.r.e.). However, this rule has limited application when governmental entities are involved because they cannot be divested of their rights in real property by estoppel, laches, adverse possession, dereliction, or the acts or conduct of their officers or agents. *Capitol Rod & Gun Club v. Lower Colo. River Auth.*, 622 S.W.2d 887, 896 (Tex.App.-Austin 1981, writ ref'd n.r.e.). We are unaware of any case applying this rule to a governmental entity except a municipality exercising a proprietary function.

In *Barlow*, Fort Worth leased land on Lake Worth to create a recreational and swimming facility. 313 S.W.2d 906. The lease's property description did not extend beyond the waterline, but the lease's terms required the tenant to build facilities and conduct activities on the lake. *Id.* The effect of the court's decision was to con-

---

ever been conveyed to or received by Plaintiff.

3. Assuming an assignment of this lease did exist, no competent summary judgment evidence has been presented to this Court of any affirmative, binding, formal, legal or unequivocal action or conduct of or by Defendant consenting to, ratifying or recognizing such an assignment.

4. Plaintiff has not been recognized in any capacity as a successor in interest to the

February 27, 1954 lease by any affirmative, binding, formal, legal or unequivocal action or conduct of or by Defendant.

4. Ector County does not attempt to distinguish between the unincorporated organization that signed the 1954 lease and the entity which was incorporated in 1959. It is unnecessary for us to determine if the 1959 incorporation had any impact on the lease, and we express no opinion on this issue.

form the lease's property description to the parties' original intent.

▇ *Barlow* is distinguishable. First, Fort Worth was engaged in a proprietary function. Second, there was no dispute that a landlord-tenant relationship existed between Fort Worth and the recreation company and that the city intended for the recreation company to provide public swimming activities on the lake. Third, the tenant was doing exactly what the city intended and exactly where the city intended them to do it—when the lease was executed.

Odessa Texas Sheriff's Posse is not asking for a revision of the 1954 lease to conform it to the parties' original intent—it is asking for judicial recognition of subsequently created property rights. The conduct upon which it relies by necessity occurred after the lease's execution, and much of it well after. Odessa Texas Sheriff's Posse points out that it or its predecessor continuously used the property from 1954 until the summer of 2005, that Ector County was aware of its use, that Ector County always treated it as an authorized occupant, that Ector County benefitted from its activities, that Ector County negotiated with it to relocate the organization, and that Ector County received grant money to purchase its interests and relocate it. If Ector County were a private party rather than a governmental entity, this conduct would be persuasive. But, because Ector County is a governmental entity and because Odessa Texas Sheriff's Posse offers this evidence to show why Ector County should be estopped from denying the rights granted under the 1954 lease rather than to establish original intent, *Barlow* is not controlling.

*Capitol Rod*, however, speaks to the unavailability of equitable doctrines to create a property right. 622 S.W.2d 887. The dispute concerned the parties' property rights on land above Lake Travis. Capitol Rod and several intervenors presented evidence that LCRA had never objected to their use of the property, had at least impliedly—if not expressly—consented to their use on several occasions, and had even run power lines to facilities built by them on the property. The court held that this was insufficient to vest the claimants with property rights because a governmental entity cannot be divested of its property by laches or estoppel. *Id.* We agree with the Austin court's analysis. Because a governmental entity cannot be divested of property rights by estoppel, the lease-by-conduct doctrine cannot provide Odessa Texas Sheriff's Posse with a property interest in Ector County's land.

### 2. Successor in interest.

▇ Odessa Texas Sheriff's Posse next argues that it succeeded to the rights of Ector County Sheriff's Posse. Much of its brief is devoted to the contention that the evidence raised a fact question on standing and, therefore, that summary judgment was inappropriate. As noted previously, the trial court was authorized to make factual determinations on jurisdictional issues. In *Bland,* the Texas Supreme Court held that, "when a defendant asserts that a plaintiff organization does not have standing to assert claims on behalf of its members, an evidentiary inquiry into the nature and purpose of the organization sufficient to determine standing does not involve a significant inquiry into the substance of the claims." 34 S.W.3d at 554. We find that the trial court was, therefore, entitled to make at least an initial factual inquiry to determine if Odessa Texas Sheriff's Posse was a successor in interest to the organization which signed the 1954 lease.

The trial court found that Odessa Texas Sheriff's Posse "has not been recognized in any capacity as a successor in interest to the February 27, 1954 lease by any affirmative, binding, formal, legal or unequivocal action or conduct of or by [Ector County]." This finding has not been challenged, and we must accept it as true. *See DeSoto Wildwood Dev., Inc. v. City of Lewisville, Tex.*, 184 S.W.3d 814, 822 (Tex. App.-Fort Worth 2006, no pet. h.) (when fact findings are unchallenged for factual or legal sufficiency, they are binding on the parties and this court). To establish successor in interest, therefore, Odessa Texas Sheriff's Posse may not rely on any formal affirmative conduct by Ector County.

▬ Odessa Texas Sheriff's Posse correctly notes that a successor in interest is one who follows another in ownership or control of property and that, when corporations are involved, a successor is ordinarily one that acquires the rights and liabilities of another by amalgamation, consolidation, or duly authorized succession. *See Enchanted Estates Cmty. Ass'n v. Timberlake Improvement Dist.*, 832 S.W.2d 800, 802 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Odessa Texas Sheriff's Posse introduced no evidence of a formal transfer or assignment from the 1959 corporation to the 1986 corporation. It points to evidence that its members understood that they were stepping into the shoes of the prior organization; that they were assuming its debts and assets, including the lease; that they considered the 1986 incorporation a name change; that Ector County treated them as if they were successors in interest; that the Ector County Attorney investigated their possession in 1990; and that the county judge and an assistant county attorney made public statements recognizing Odessa Tex-

as Sheriff's Posse as a successor in interest.

The members' beliefs are insufficient to make the 1986 corporation a successor in interest to the 1959 corporation. The county judge and assistant county attorney's comments and actions and the county's treatment of them are also insufficient because Ector County cannot be divested of its property rights through the application of an equitable doctrine. *Capitol Rod*, 622 S.W.2d at 896. Because the evidence establishes the 1959 corporation and the 1986 corporation were separate entities and because there was no evidence of any affirmative action constituting a succession in interest from one to the other, the trial court did not err when it found Odessa Texas Sheriff's Posse was not a successor in interest to the 1959 corporation.

*3. Assignment.*

▬ Odessa Texas Sheriff's Posse next argues that it presented sufficient evidence to create a fact question on whether the 1959 corporation orally assigned its rights in the 1954 lease to the 1986 corporation. The trial court found that "[n]o assignment of any right or interest to or in the February 27, 1954 lease has ever been conveyed to or received by [the Odessa Texas Sheriff's Posse]." Because Odessa Texas Sheriff's Posse does not contend a formal assignment was executed, but argues the lease was orally assigned, it does not directly challenge this finding. Oral assignments of real property leases necessarily raise statute of frauds concerns; but, before addressing that issue, we first consider whether under the record such an assignment was even possible.

The 1959 corporation's charter was forfeited in 1962 for nonpayment of taxes. On February 6, 1963, the secretary of state determined that the corporation's right to do business had been forfeited, that it had no assets to satisfy a judgment

for franchise taxes and penalties, and that it had failed to revive its right to do business and, therefore, ordered that the corporation's charter be "forfeited without judicial ascertainment and made null and void." Ector County argues the 1959 corporation's ability to conduct any winding up business ceased three years later pursuant to TEX.REV.CIV. STAT. ANN. art. 1396–7.12(A) (Vernon's 2003). Odessa Texas Sheriff's Posse answers that that forfeiture is not a dissolution and that, under TEX. REV.CIV. STAT. art. 7.12 (1955), which was in effect in 1963, it had the ability to continue conducting some business.

In 1963, Article 7.12(A) provided:

> The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this Act, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within three years after the date of such dissolution.

Odessa Texas Sheriff's Posse's contention that the forfeiture of its corporate charter did not automatically result in the corporation's dissolution is correct. Prior to 1993, forfeitures of corporate charters for failure to pay taxes did not result in automatic dissolution. *See, e.g., Lighthouse Church of Cloverleaf v. Tex. Bank,* 889 S.W.2d 595, 600 (Tex.App.-Houston [14th Dist.] 1994, writ denied) ("a corporation which has forfeited it[s] corporate charter for failing to pay franchise taxes is never truly dead, but may be resurrected by paying the delinquent taxes").

Odessa Texas Sheriff's Posse relies upon *Lighthouse Church* to argue that the 1959 corporation still had the ability to assign its rights because it was not formally dissolved. In that case, the court held that a deed to a corporation whose corporate charter had been forfeited was not void because the corporation still had sufficient legal existence to take property. The court reached this result after noting that "[f]orfeiture of a corporate charter does not extinguish the corporation as a legal entity so long as there is a statutory right to have the corporate charter reinstated." *Id.* at 601. The 1959 corporation, however, did not have that same right.

A corporation's right to seek reinstatement is significantly different today than it was in 1963. Today, a corporation can be reinstated by filing the appropriate paperwork and paying any delinquent tax, penalty, or interest. *See* TEX. TAX CODE ANN. §§ 171.312–.313 (Vernon 2002). In 1963, a corporation whose charter had been forfeited had no remedy or appeal. *See McGown v. Kittel,* 480 S.W.2d 47, 49 (Tex. Civ.App.-Fort Worth 1972, writ ref'd n.r.e.) (prior to 1965 there was no procedure for a corporation whose charter had been forfeited to make application for its reinstatement). The reinstatement process was added by the legislature in 1965. The emergency clause of that legislation provided:

> The fact that corporations have no procedure by which to reinstate their charter and right to do business after the forfeiture of their charter creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended.

*Id.* The 1965 legislation did not have retroactive effect. *Id.* at 49–50; *Gano v. Filter–Aid Co.,* 414 S.W.2d 480 (Tex.Civ.App.-Austin 1967, no writ). Consequently, in

1963 when the secretary of state entered its forfeiture order, the 1959 corporation had no right to seek reinstatement.

When the 1959 corporation's charter was forfeited, title to its assets bifurcated. Legal title remained in the corporation, and beneficial title vested in the shareholders. *Regal Constr. Co. v. Hansel,* 596 S.W.2d 150, 153 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). In *El T. Mexican Restaurants, Inc. v. Bacon,* 921 S.W.2d 247 (Tex.App.-Houston [1st Dist.] 1995, writ denied), the court described the effect of a charter forfeiture on the ability to assert the corporation's rights in court. The Houston court concluded that the corporation had standing, but not capacity, while the shareholder had capacity, but not standing. 921 S.W.2d at 251–52. The court noted that a corporation with legal title to a cause of action could still dispose of that claim, but because of the forfeiture, the corporation could not assign the claim to its shareholder for prosecution in a Texas court. *Id.* at 252, n. 6. Consequently, even if we assume the 1959 corporation still exists in some form, the secretary of state's forfeiture order deprived it of the right to conduct any further business in the state. This would necessarily include any assignment of the 1954 lease and would prevent anyone else from asserting a claim on its behalf in Texas courts.

The record establishes that the 1959 corporation did not assign its interest to the 1986 corporation. Over twenty years elapsed from the secretary of state's forfeiture order to the creation of the 1986 corporation. The trial court was given no evidence of any action taken to reinstate the 1959 corporation or of any effective assignment of rights prior to February 6, 1963. In the absence of a reinstatement or at least a right of reinstatement, the 1959 corporation had insufficient existence by 1986 to convey any rights to the new corporation. The trial court did not err when it found there was no assignment of interest.

*4. Estoppel.*

■■■■ The doctrine of equitable estoppel requires (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex.1998). Odessa Texas Sheriff's Posse acknowledges the general rule that, when a governmental entity is exercising its governmental powers, it is not subject to estoppel. *City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970). However, Odessa Texas Sheriff's Posse points to an exception when no governmental function is impaired and estoppel is necessary to prevent injustice. *Id.* at 836. Ector County argues that this rule applies only to municipalities and that it cannot be asserted against a county.

Both parties acknowledge that the Texas Supreme Court has not specifically addressed whether the estoppel exception applies to governmental entities other than municipalities, and neither side has cited a case where the exception was applied to any entity other than a municipality. Both parties draw our attention to *City of White Settlement v. Super Wash, Inc.,* 198 S.W.3d 770 (Tex.2006), where the court held that White Settlement was not estopped from enforcing an ordinance because the exception was not applicable under the facts of that case. The court's opinion includes a discussion of the policy reasons supporting the general rule and the exception. The court's opinion refers

only to municipalities being estopped,[5] but this may be explained by the fact that the city was the only governmental entity involved. The court does, however, include a reference to the differences between the exercise of governmental and proprietary functions, noting that, when a municipality is performing a proprietary function, it is subject to equitable estoppel. *Id.* at 773, n. 3. That discussion is relevant only to municipalities because only a municipality may exercise a proprietary function.

 Odessa Texas Sheriff's Posse argues the exception is particularly appropriate in takings cases because it can otherwise be deprived of its constitutional rights. This argument confuses cause and effect. The takings clause applies only if Odessa Texas Sheriff's Posse has a property interest in the first instance. Odessa Texas Sheriff's Posse does not ask us to apply the exception to preserve a property interest but, rather, to create one. Estoppel does not create new property rights. It deprives one party of the opportunity to assert a claim or defense. Consequently, we cannot agree with Odessa Texas Sheriff's Posse that the estoppel rules are applied any differently in takings cases.

 We recognize that, because the Texas Supreme Court has not expressly stated that estoppel cannot be applied to counties, there remains some uncertainty on this issue. However, we do not think it is merely coincidental that the court re-

ferred only to municipalities rather than governmental entities generally in its *White Settlement* opinion. Nor can we disregard the fact that the court has never applied estoppel to any entity other than a municipality. Because only municipalities can exercise proprietary functions, and the court was careful to distinguish between governmental and proprietary activities, we believe the court would not apply estoppel to a county.

If we are incorrect, we do not believe the exception is applicable under the facts of this case. First, a governmental entity cannot be estopped from exercising its governmental functions. *See Prasifka,* 450 S.W.2d at 835 (enforcing zoning restrictions); *Rolison v. Puckett,* 145 Tex. 366, 198 S.W.2d 74, 77 (1946) (collecting taxes). Ector County's airport expansion is a governmental function. Granted, Odessa Texas Sheriff's Posse is not attempting to stop the expansion—but using estoppel to create property rights that would not otherwise exist would constitute an interference with that process. Second, the exception requires evidence that the county acted deliberately to induce the Odessa Texas Sheriff's Posse to act in a way that benefitted the county but prejudiced the organization. *See White Settlement,* 198 S.W.3d at 775.

Odessa Texas Sheriff's Posse points to considerable evidence that the property

**5.** I.e.: "[W]e also found 'authority for the proposition that a *municipality* may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions.'" 198 S.W.3d at 774 (quoting *Prasifka,* 450 S.W.2d at 836) (emphasis added); "Evidence that *city* officials acted deliberately to induce a party to act in a way that benefitted the *city* but prejudiced the party weighs in favor of applying the exception articulated in *Prasifka.*" *Id.* at 775 (emphasis added); "We first note that precluding a *city* from perform-

ing a specific governmental function in a single instance is not *per se* interference with its governmental functions. Otherwise, every attempt to estop a *city* would be considered interference with a governmental function, and the exception stated in *Prasifka* could never apply." *Id.* at 776 (first and third emphasis added); "Generally, a court may estop a *city* only if it would not interfere with the *city's* ability to perform any act that the Legislature has deemed, or that the court determines to be, a *municipal* governmental function." *Id.* at 777 (emphasis added).

has been in continuous use since 1954, that many of the activities carried out on the property or by the organization benefitted the county, and that the county always treated it as an authorized occupant. It does not, however, point to any affirmative misstatement which induced action on its part.

■ Whether the estoppel exception applies is a question for the court. *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999). The record is absent evidence of the type of affirmative misstatement required by the supreme court. It appears that both parties mistakenly believed Odessa Texas Sheriff's Posse was the same entity that executed the 1954 lease and that, when the decision was made to expand the airport runway, the parties engaged in significant conversation about relocation and financial assistance. But, just as in *White Settlement*, these facts are insufficient to establish the estoppel exception.

We find that the trial court did not err when it determined that Odessa Texas Sheriff's Posse did not have standing. Odessa Texas Sheriff's Posse's first two issues are overruled. Because Odessa Texas Sheriff's Posse does not have standing, it is unnecessary for us to consider the third issue relating to a potential takings claim.

### C. Texas Open Meetings Act

Odessa Texas Sheriff's Posse also asserted an Open Meetings Act [6] claim, contending that the commissioners' court's March 28 and May 9, 2005 meeting notices were inadequate and that the county's subsequent decision to evict it was void. Ector County did not dispute Odessa Texas Sheriff's Posse standing to assert a TOMA claim, but challenged the merits of the claim in part, with a traditional motion for summary judgment.[7] Odessa Texas Sheriff's Posse responded with a motion for partial summary judgment arguing that a TOMA violation was established as a matter of law.

■ Ector County is subject to the Texas Open Meetings Act. TOMA generally requires that meetings of governmental bodies be open to the public[8]; that they provide written notice of the date, hour, place, and subject matter of a meeting[9]; and that, when an issue is one of special interest to the public, they provide full and adequate notice of the subject matter of the meeting so that an objective reader receives meaningful notice. *Mayes v. City of De Leon*, 922 S.W.2d 200, 203 (Tex.App.-Eastland 1996, writ denied).

The Odessa Texas Sheriff's Posse lease and potential relocation were complicated by a number of factors—including the fact that there were two posse organizations. On February 14, 2005, Ector County's first assistant county attorney reported that the organization that occupied the building was not the same one that formed the original Ector County Sheriff's Posse, that there had been division within the posse in 2003, and that one group kept the original name and the other remained at the airport and was involved in negotiations with the county.

The commissioners met again on March 10, 2005. Their meeting notice included

---

**6.** Texas Open Meetings Act (TOMA), Tex. Gov't Code Ann. ch. 551 (Vernon 2004 & Supp 2006).

**7.** Ector County contended that the May 9 notice was sufficient as a matter of law but did not contest Odessa Texas Sheriff's Posse's

contention regarding the sufficiency of the March 28 notice.

**8.** Section 551.002.

**9.** Section 551.041.

the following item: "[T]o consider and discuss concerns from the Ector County Sheriff's Posse." Mary Lewis, a member of the Ector County Sheriff's Posse, appeared and suggested that the county consider allowing Odessa Texas Sheriff's Posse to use Moss Arena and that the TxDOT grant be used to build additional stalls rather than a replacement facility. Following her remarks, the commissioners' court allowed Odessa Texas Sheriff's Posse's attorney to speak. Lewis's recommendations and the relocation issue were discussed. At the end of the meeting, the relocation issue was tabled so that the attorneys could continue their discussions with the hope that the issue could be finally resolved at the next commissioners' court meeting.

The next meeting was on March 28, 2005. The meeting notice provided in relevant part: "To consider and discuss concerns from the Ector County Sheriff's Posse,—Jerry D. Caddel, County Judge." This was the same language that had been used for the previous meeting. The record does not include a transcript of this meeting and, thus, we do not know if Ector County Sheriff's Posse addressed the commissioners' court again. But, the record establishes that the commissioners' court voted to not execute a proposed contract with Odessa Texas Sheriff's Posse, to retain outside counsel to send notice that the lease was void, and to provide it with thirty days to vacate the property. Odessa Texas Sheriff's Posse contends that the meeting notice was defective because it was vague and inaccurate and that the commissioners' vote was illegal because the notice did not indicate any action would be taken.

The commissioners' court met again on May 9, 2005. The notice for this meeting provided:

Pursuant to § 551.071 of the Texas Government Code, consult with attorneys pertaining to pending litigation: *Odessa Texas Sheriff's Posse, Inc. v. Ector County, Texas:* Cause No. C–119,360 in the District Court of Ector County, Texas, 244th Judicial District and in open session take any and all action necessary concerning said pending litigation; Pursuant to § 551.072 of the Texas Government Code, deliberate the purchase, exchange lease or value of real property in open session take any and all action necessary pertaining to same.—Jerry D. Caddel, County Judge. Following the executive session, the commissioners' court voted to direct the county's attorneys to take all steps necessary to defend the litigation and to file any other action they deemed necessary. Odessa Texas Sheriff's Posse contends that this notice was also defective because it provided inadequate notice and, therefore, that the county's eviction decision was void.

■■■■ Because the notices' content is undisputed, their adequacy is a question of law. *Rettberg v. Texas Dep't of Health,* 873 S.W.2d 408, 413 (Tex.App.-Austin 1994, no writ). The test is whether a notice is sufficiently specific to alert the general public to the topic to be considered. *City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762, 765 (Tex.1991). If a notice specifically discloses the subject to be considered, TOMA's requirements are met and the governmental body can take final action, decide, or vote on a matter. *City of San Angelo v. Tex. Nat'l Resource Conservation Comm'n,* 92 S.W.3d 624, 629 (Tex.App.-Austin 2002, no pet.).

■■■ Odessa Texas Sheriff's Posse asserts several challenges to the March 28 meeting notice. These can be grouped into two categories: first, that the notice failed to give adequate notice of the sub-

ject matter of the meeting and, second, that it failed to disclose that action might be taken.

Ector County was not required to specifically indicate that it might vote. By stating that it intended to "consider" concerns from the Ector County Sheriff's Posse, the public was given adequate notice that action might be taken. *See id.* at 629–30. However, the same cannot be said for the meeting's subject matter. To consider if a notice sufficiently informs the public of the topic under discussion, we compare the content of the notice given and the action taken at the meeting. *Rettberg,* 873 S.W.2d at 412. Just as the 1959 corporation and 1986 corporation were separate entities, Ector County Sheriff's Posse and Odessa Texas Sheriff's Posse are separate entities. Ector County's notice that it would consider Ector County Sheriff's Posse concerns did not advise the public that the County might consider taking action against Odessa Texas Sheriff's Posse. The March 28 notice, therefore, did not satisfy TOMA.

■ To determine the effect of this holding, we must consider the May 9 meeting. Unlike the March 28 notice, the May 9 notice correctly identified Odessa Texas Sheriff's Posse; it specifically referred to the pending litigation; and it indicated that the commissioners would meet with counsel in executive session to discuss the litigation and, in open session, might take any and all action necessary concerning that litigation. Odessa Texas Sheriff's Posse argues this notice was still insufficient because it only referred to potential action to defend the pending litigation and did not indicate that the county might authorize its attorneys to initiate new litigation. Consequently, it concludes that

the eviction notice sent following the meeting was void.

■ It is unnecessary to provide notice of all of the consequences which might flow from consideration of the stated subject. *Turnpike Auth. v. City of Fort Worth,* 554 S.W.2d 675, 676 (Tex.1977). Ector County provided an affidavit from the attorney who wrote the May 10 eviction notice. He stated that the notice was sent in response to the May 9 meeting and explained why the eviction notice was part of the county's defense to Odessa Texas Sheriff's Posse's litigation. Odessa Texas Sheriff's Posse did not contest that affidavit. The eviction notice is rationally related to the litigation. It challenged the inverse condemnation claim by denying any right of possession. We find that Ector County's May 9 meeting notice complied with TOMA and, therefore, that the May 10 eviction notice was not void.[10] Odessa Texas Sheriff's Posse's fourth and fifth issues are overruled to the extent they challenge the sufficiency of the May 9 meeting notice and contend the May 10 eviction notice was a void act.

■ That does not automatically moot the challenge to the March 28 notice. The general rule is that a governmental body may not ratify a prior illegal act. *Mayes,* 922 S.W.2d at 203. It may, however, correct its actions so long as the corrective action has no retroactive effect. *Lower Colorado River Auth. v. City of San Marcos,* 523 S.W.2d 641, 646–47 (Tex.1975). Odessa Texas Sheriff's Posse did not vacate the property in response to the first eviction notice. The May 10 notice did not have retroactive effect because it provided thirty days notice to vacate the property. It is, therefore, unnecessary to determine

10. We need not determine if this issue is one of special interest to the public because the notice would be sufficient under that standard as well.

if the original eviction notice was a void act.

 At oral argument, Odessa Texas Sheriff's Posse's counsel argued that, even if the May 9 meeting notice was sufficient, it would still have a claim for attorney's fees if the March 28 meeting notice was insufficient. This is correct. Section 551.142 provides that a prevailing party in a TOMA action may recover its fees and costs. Whether to make an award falls within the trial court's sound discretion. *Bell v. Katy Indep. Sch. Dist.*, 994 S.W.2d 862, 867 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Because the trial court has not yet had the opportunity to exercise its discretion, a partial remand is appropriate. We sustain Odessa Texas Sheriff's Posse's fourth and fifth issues to the extent they contend the March 28 meeting notice failed to comply with TOMA.

## V. *Holding*

The trial court's judgment is affirmed in part and reversed and remanded in part. The judgment is reversed to the extent the trial court found that the March 28 meeting notice complied with TOMA, and this matter is remanded for determination of whether an award of attorney's fees and costs is appropriate and, if so, in what amount. In all other respects, the trial court's judgment is affirmed.