Opinion filed October 26, 2006

















 
 
  
 
 







 
 
  
 
 




Opinion filed October 26, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00309-CV 

                                                    __________

 

                    ODESSA TEXAS SHERIFF=S POSSE, INC., Appellant

 

                                                             V.

 

                                  ECTOR COUNTY, TEXAS, Appellee

 



 

                                         On
Appeal from the 244th District Court

 

                                                           Ector County, Texas

 

                                                Trial
Court Cause No. C-119,360

 



 

                                                                   O
P I N I O N

 

This is a declaratory judgment and inverse
condemnation action.  The trial court
entered a take-nothing judgment in favor of Ector County, Texas.  We affirm in part and reverse and remand in
part.

                                                              I.
Background Facts








In 1954, an organization known as the Ector County
Sheriff=s Posse
leased approximately seventy-nine acres of land from Ector County
for a term of ninety-nine years for $10. 
The organization was a riding club created to promote a love of horses
and good horsemanship, to promote and maintain rodeos, and to serve as goodwill
ambassadors for Odessa and Ector County
by participating in rodeo events.  Ector
County Sheriff=s Posse
took possession of the property and began building improvements.

In 1959, the posse incorporated itself as AThe Ector County Sheriff=s Posse, Inc.@  In 1963, the secretary of state dissolved the
corporation for failing to pay franchise taxes. 
In 1986, the Ector County Sheriff=s
Posse, Inc. was again incorporated.  In
2003, the organization changed its name to AThe
Odessa Texas Sheriff=s
Posse, Inc.@ because
the prior name had been taken by former posse members.

The leased property was occupied continuously from
1954 and was used for a variety of purposes including rodeos and
barbecues.  It was made available to law
enforcement agencies for training and to other charitable, religious, and
educational groups for their use.  Over
the years, substantial improvements were added to the property, including
barns, horse stalls, a clubhouse, an arena, water wells, septic tanks, a horse
walker, concession stand, and restrooms. 
By 2005, the property=s
improvements were estimated to be worth approximately $300,000.

In 1999, Ector County
decided to extend and widen a runway at Schlemeyer Field to make the airport
more accessible for larger aircraft that were being forced to use other
facilities.  Texas Department of
Transportation officials required the removal of the leased property=s improvements because they were
located in the safety apron of the expanded runway.  Ector
 County and Odessa Texas
Sheriff=s Posse
engaged in negotiations to relocate the group. 
The parties could not reach an agreement, and Ector County
ordered the group to vacate the property. 
Odessa Texas Sheriff=s
Posse filed an inverse condemnation and declaratory judgment action.  Both parties filed motions for summary
judgment.  Ector County
also filed a motion to dismiss for lack of standing.  The trial court denied Odessa Texas Sheriff=s Posse=s
motion, granted Ector County=s
traditional motion for summary judgment,[1]
granted Ector County=s
motion to dismiss, and entered a take-nothing judgment in its favor.

                                               II.
Issues








Odessa Texas Sheriff=s
Posse challenges the trial court=s
judgment with five issues.  Odessa Texas
Sheriff=s Posse
argues in its first two issues that the trial court erred by not finding that
it has standing as a matter of law or, alternatively, by not finding that a
question of fact exists on its standing. 
It argues in its third issue that summary judgment was improper because
a question of fact exists on its inverse condemnation claim.  Finally, Odessa Texas Sheriff=s Posse contends in issues four and
five that it established a violation of the Texas Open Meetings Act as a matter
of law or, alternatively, that a question of fact existed on this claim.

                                                            III.
Standard of Review

Standing is an element of subject-matter
jurisdiction. Tex.
Ass=n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440,
445-46 (Tex.
1993).  The plaintiff has the burden to
allege facts affirmatively demonstrating that the trial court has
subject-matter jurisdiction.  Id. at 446.  Whether a court has subject-matter
jurisdiction is a legal question that is reviewed de novo.  Ector
County v. Breedlove, 168 S.W.3d
864, 865 (Tex.
App.CEastland
2004, no pet.).  When reviewing a plea to
the jurisdiction, we consider not only the plaintiff=s
pleadings but also the evidence before the trial court.  Eastland County Coop. Dispatch v. Poyner,
64 S.W.3d 182, 196-97 (Tex. App.CEastland
2001, pet. denied).  We construe the
pleadings in the plaintiff=s
favor and look to the pleader=s
intent.  County
of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex.
2002).

The standard of review for traditional summary
judgments is well recognized.  We must
consider the summary judgment evidence in the light most favorable to the
nonmovant, indulging all reasonable inferences in favor of the nonmovant, and
determine whether the movant proved that there were no genuine issues of
material fact and that it was entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex.
1985).  A defendant is entitled to
summary judgment if it either disproves an element of each of the plaintiff=s causes of action or establishes an
affirmative defense on each of the plaintiff=s
causes of action as a matter of law.   Am. Tobacco Co. v. Grinnell, 951 S.W.2d
420, 425 (Tex.
1997).








When both parties move for summary judgment on the
same issues and the trial court grants one motion and denies the other, we
consider the summary judgment evidence presented by both sides; we determine
all questions presented; and, if we determine the trial court erred, we render
the judgment the trial court should have rendered.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
When a trial court=s
order granting summary judgment does not specify the grounds relied upon, we
must affirm the summary judgment if any of the summary judgment grounds are
meritorious.  FM Props. Operating Co.
v. City of Austin, 22 S.W.3d 868, 873 (Tex. 2000).

                                                       IV. Discussion

A.  Was
the Trial Court Entitled to Make Fact Findings?

The trial court ruled on the cross motions for
summary judgment and Ector
 County=s motion to dismiss for lack of
standing in its final judgment and order. 
The judgment included several findings of fact.  Odessa Texas Sheriff=s Posse contends that fact findings are
inappropriate in a summary judgment context and asks us to ignore them.  Ector
 County contends that we
may properly consider the findings because it filed not only a motion for
summary judgment but also a motion to dismiss for lack of standing.  Because trial courts may properly consider
evidence and, thus, make fact findings when determining whether they have
jurisdiction, Ector
 County concludes the
trial court=s fact
findings are appropriate.

Odessa Texas Sheriff=s
Posse is correct that findings of fact have no place in a summary judgment
proceeding because a summary judgment is appropriate only if there is no
genuine issue of material fact.  If a
trial court makes factual findings, this indicates a question of fact was
present and, therefore, summary judgment was improper.  See IKB Indus. v. Pro-Line Corp., 938
S.W.2d 440, 441 (Tex.
1997).  However, the Texas Supreme Court
has held that, in appropriate circumstances, trial courts may consider evidence
and make factual determinations to resolve jurisdictional issues.  See Tex.
Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217 (Tex. 2004). 
        Miranda involved a
personal injury claim for injuries caused by a tree limb falling on the
claimant=s
head.  To overcome the Parks and Wildlife
Department=s
sovereign immunity defense, Miranda was required to establish a gross
negligence claim.  Her petition included
a gross negligence allegation.  The
Department filed a plea to the jurisdiction, which was supported by evidence,
and a separate motion to dismiss arguing that there was no evidence of gross
negligence.  Id. at 222.  The trial court denied both motions, and the
court of appeals affirmed.  The court of
appeals held that, because the Department did not allege that Miranda=s pleading was a sham for obtaining
jurisdiction, it was impermissible to consider evidence of the substance of
Miranda=s
claim.  Id.








The supreme court disagreed and held that a trial
court must consider evidence when necessary to resolve jurisdictional issues.  Id.
at 223.  If the defendant=s jurisdictional challenge is to the
plaintiff=s
pleadings, this is resolved by examining the pleadings.  If the challenge is to the existence of
jurisdictional facts, then the trial court should consider the parties= evidence.  Id.
at 227.

The supreme court, however, distinguished
instances in which the jurisdictional facts also implicate the merits of the
case.  Id. at 226.  The court cited with approval decisions in
which three federal courts held that, if jurisdictional issues are inextricably
bound to the merits of the case, their resolution is for the jury.[2]  In that instance, the plaintiff=s burden is to show that there is a
disputed material fact question regarding the jurisdictional issue.   Id. at 228. 

Consequently, whether it was appropriate for the
trial court to make fact findings depends upon whether the issue is
jurisdictional, substantive, or inextricably tied to a substantive issue and
upon whether the fact finding is germane to the motion to dismiss or the cross motions
for summary judgment.  This requires that
we consider each of the underlying issues seperately.

B.  Does
Odessa Texas Sheriff=s
Posse Have Standing to Assert a Takings Claim?

A plaintiff must have both standing and capacity
to bring a lawsuit.  Austin Nursing
Ctr., Inc. v. Lovato, 171 S.W.3d 845, 848 (Tex. 2005). 
Because standing is a prerequisite to subject-matter jurisdiction, Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 553 (Tex. 2000), unless a standing question was
inextricably tied to a substantive claim, it was appropriate for the trial
court to consider evidence and make fact findings on standing.[3]








A plaintiff has standing when it is personally
aggrieved.  Nootsie, Ltd.  v. Williamson County Appraisal Dist., 925
S.W.2d 659, 661 (Tex.
1996).  The general test for standing in Texas requires that
there be a real controversy between the parties that will be actually
determined by the judicial declaration sought. 
Id.
at 662.

Ector
 County contends that
Odessa Texas Sheriff=s
Posse lacks standing because it is not a party to the 1954 lease.  Ector
 County presented evidence
that, in 1959, the Ector County Sheriff=s
Posse, Inc. was incorporated and assigned Charter No. 15242900.  The corporation=s
right to do business was forfeited in 1962 for failure to pay franchise taxes;
and, in 1963, the secretary of state determined that it had no assets and
forfeited its charter.  When the
organization was incorporated again in 1986, it was issued Charter No.
102008701.  Ector County
argues that the organization incorporated in 1986 and issued Charter No.
102008701 is a separate and distinct entity from the organization that signed
the 1954 lease and, therefore, that it lacks standing to assert a takings
claim.[4]


Odessa Texas Sheriff=s
Posse asserts that it has standing because it has a property interest in the
leased premises under one of four theories: 
lease by conduct; successor in interest; assignment; or estoppel.  Each theory relies upon equitable principles
because Odessa Texas Sheriff=s
Posse does not claim that the original corporation formally assigned its
interest in the lease or that Ector County formally recognized its property
rights.  Because one cannot acquire a property
interest adverse to a county by the application of an equitable doctrine, we
agree with the trial court that Odessa Texas Sheriff=s
Posse had no property interest in the leased property.

1. 
Lease by conduct.

In appropriate circumstances, a lease may be
created by words or other conduct expressing consent to the lessee=s possession.  City of Fort Worth v. Barlow, 313
S.W.2d 906, 915 (Tex. Civ. App.CFort
Worth 1958, writ ref=d
n.r.e.).  However, this rule has limited
application when governmental entities are involved because they cannot be
divested of their rights in real property by estoppel, laches, adverse
possession, dereliction, or the acts or conduct of their officers or
agents.  Capitol Rod & Gun Club v.
Lower Colo. River Auth., 622 S.W.2d 887, 896 (Tex. App.CAustin 1981, writ ref=d n.r.e.).  We are unaware of any case applying this rule
to a governmental entity except a municipality exercising a proprietary
function.  








In Barlow, Fort Worth leased land on Lake
Worth to create a recreational and swimming facility.  313 S.W.2d 906.  The lease=s
property description did not extend beyond the waterline, but the lease=s terms required the tenant to build
facilities and conduct activities on the lake.  Id. 
The effect of the court=s
decision was to conform the lease=s
property description to the parties=
original intent. 

Barlow is distinguishable.  First, Fort Worth was engaged in a
proprietary function.  Second, there was
no dispute that a landlord-tenant relationship existed between Fort Worth and
the recreation company and that the city intended for the recreation company to
provide public swimming activities on the lake. 
Third, the tenant was doing exactly what the city intended and exactly
where the city intended them to do it B
when the lease was executed.  

Odessa Texas Sheriff=s
Posse is not asking for a revision of the 1954 lease to conform it to the
parties= original
intent B it is
asking for judicial recognition of subsequently created property rights.  The conduct upon which it relies by necessity
occurred after the lease=s
execution, and much of it well after. 
Odessa Texas Sheriff=s
Posse points out that it or its predecessor continuously used the property from
1954 until the summer of 2005, that Ector County was aware of its use, that
Ector County always treated it as an authorized occupant, that Ector County
benefitted from its activities, that Ector County negotiated with it to
relocate the organization, and that Ector County received grant money to
purchase its interests and relocate it. 
If Ector County were a private party rather than a governmental entity,
this conduct would be persuasive.  But,
because Ector County is a governmental entity and because Odessa Texas Sheriff=s Posse offers this evidence to show
why Ector County should be estopped from denying the rights granted under the
1954 lease rather than to establish original intent, Barlow is not
controlling.








Capitol Rod, however, speaks to the
unavailability of equitable doctrines to create a property right.  622 S.W.2d 887.  The dispute concerned the parties= property rights on land above Lake
Travis.  Capitol Rod and several
intervenors presented evidence that LCRA had never objected to their use of the
property, had at least impliedly B
if not expressly B
consented to their use on several occasions, and had even run power lines to
facilities built by them on the property. 
The court held that this was insufficient to vest the claimants with
property rights because a governmental entity cannot be divested of its
property by laches or estoppel.  Id.  We agree with the Austin court=s analysis. Because a governmental
entity cannot be divested of property rights by estoppel, the lease-by-conduct
doctrine cannot provide Odessa Texas Sheriff=s
Posse with a property interest in Ector County=s
land.

2. 
Successor in interest.

Odessa Texas Sheriff=s
Posse next argues that it succeeded to the rights of Ector County Sheriff=s Posse.  Much of its brief is devoted to the
contention that the evidence raised a fact question on standing and, therefore,
that summary judgment was inappropriate. 
As noted previously, the trial court was authorized to make factual
determinations on jurisdictional issues. 
In Bland, the Texas Supreme Court held that, Awhen a defendant asserts that a
plaintiff organization does not have standing to assert claims on behalf of its
members, an evidentiary inquiry into the nature and purpose of the organization
sufficient to determine standing does not involve a significant inquiry into
the substance of the claims.@  34 S.W.3d at 554.  We find that the trial court was, therefore,
entitled to make at least an initial factual inquiry to determine if Odessa
Texas Sheriff=s Posse
was a successor in interest to the organization which signed the 1954 lease.

The trial court found that Odessa Texas Sheriff=s Posse Ahas
not been recognized in any capacity as a successor in interest to the February
27, 1954 lease by any affirmative, binding, formal, legal or unequivocal action
or conduct of or by [Ector County].@  This finding has not been challenged, and we
must accept it as true.  See DeSoto
Wildwood Dev., Inc. v. City of Lewisville, Tex., 184 S.W.3d 814, 822 (Tex.
App.CFort
Worth 2006, no pet. h.) (when fact findings are unchallenged for factual or
legal sufficiency, they are binding on the parties and this court).  To establish successor in interest,
therefore, Odessa Texas Sheriff=s
Posse may not rely on any formal affirmative conduct by Ector County. 








Odessa Texas Sheriff=s
Posse correctly notes that a successor in interest is one who follows another
in ownership or control of property and that, when corporations are involved, a
successor is ordinarily one that acquires the rights and liabilities of another
by amalgamation, consolidation, or duly authorized succession.  See Enchanted Estates Cmty. Ass=n v. Timberlake Improvement Dist.,
832 S.W.2d 800, 802 (Tex. App.CHouston
[1st Dist.] 1992, no pet.).  Odessa Texas
Sheriff=s Posse
introduced no evidence of a formal transfer or assignment from the 1959
corporation to the 1986 corporation.  It
points to evidence that its members understood that they were stepping into the
shoes of the prior organization; that they were assuming its debts and assets,
including the lease; that they considered the 1986 incorporation a name change;
that Ector County treated them as if they were successors in interest; that the
Ector County Attorney investigated their possession in 1990; and that the
county judge and an assistant county attorney made public statements
recognizing Odessa Texas Sheriff=s
Posse as a successor in interest.

The members=
beliefs are insufficient to make the 1986 corporation a successor in interest
to the 1959 corporation.  The county
judge and assistant county attorney=s
comments and actions and the county=s
treatment of them are also insufficient because Ector County cannot be divested
of its property rights through the application of an equitable doctrine.  Capitol Rod, 622 S.W.2d at 896.  Because the evidence establishes the 1959
corporation and the 1986 corporation were separate entities and because there
was no evidence of any affirmative action constituting a succession in interest
from one to the other, the trial court did not err when it found Odessa Texas
Sheriff=s Posse
was not a successor in interest to the 1959 corporation.

3. 
Assignment.

Odessa Texas Sheriff=s
Posse next argues that it presented sufficient evidence to create a fact
question on whether the 1959 corporation orally assigned its rights in the 1954
lease to the 1986 corporation.  The trial
court found that A[n]o
assignment of any right or interest to or in the February 27, 1954 lease has
ever been conveyed to or received by [the Odessa Texas Sheriff=s Posse].@
Because Odessa Texas Sheriff=s
Posse does not contend a formal assignment was executed, but argues the lease
was orally assigned, it does not directly challenge this finding.  Oral assignments of real property leases
necessarily raise statute of frauds concerns; but, before addressing that
issue, we first consider whether under the record such an assignment was even
possible.








The 1959 corporation=s
charter was forfeited in 1962 for nonpayment of taxes.  On February 6, 1963, the secretary of state
determined that the corporation=s
right to do business had been forfeited, that it had no assets to satisfy a
judgment for franchise taxes and penalties, and that it had failed to revive
its right to do business and, therefore, ordered that the corporation=s charter be Aforfeited
without judicial ascertainment and made null and void.@  Ector County argues the 1959 corporation=s ability to conduct any winding up
business ceased three years later pursuant to Tex.
Rev. Civ. Stat. Ann. art. 1396-7.12(A) (Vernon=s
2003).  Odessa Texas Sheriff=s Posse answers that that forfeiture is
not a dissolution and that, under Tex.
Rev. Civ. Stat. art. 7.12 (1955), which was in effect in 1963, it had
the ability to continue conducting some business.

In 1963, Article 7.12(A) provided:

The dissolution of a corporation either (1) by the
issuance of a certificate of dissolution by the Secretary of State, or (2) by a
decree of court when the court has not liquidated the assets and business of
the corporation as provided in this Act, or (3) by expiration of its period of
duration, shall not take away or impair any remedy available to or against such
corporation, its officers, directors, or shareholders, for any right or claim
existing, or any liability incurred, prior to such dissolution if action or
other proceeding thereon is commenced within three years after the date of such
dissolution.

 

Odessa Texas Sheriff=s
Posse=s
contention that the forfeiture of its corporate charter did not automatically
result in the corporation=s
dissolution is correct.  Prior to 1993,
forfeitures of corporate charters for failure to pay taxes did not result in
automatic dissolution.  See, e.g.,
Lighthouse Church of Cloverleaf v. Tex. Bank, 889 S.W.2d 595, 600 (Tex.
App.CHouston
[14th Dist.] 1994, writ denied) (Aa
corporation which has forfeited it[s] corporate charter for failing to pay
franchise taxes is never truly dead, but may be resurrected by paying the
delinquent taxes@).  

Odessa Texas Sheriff=s
Posse relies upon Lighthouse Church to argue that the 1959 corporation
still had the ability to assign its rights because it was not formally
dissolved.  In that case, the court held
that a deed to a corporation whose corporate charter had been forfeited was not
void because the corporation still had sufficient legal existence to take
property.  The court reached this result
after noting that A[f]orfeiture
of a corporate charter does not extinguish the corporation as a legal entity so
long as there is a statutory right to have the corporate charter reinstated.@ 
Id. at 601.  The 1959
corporation, however, did not have that same right.








A corporation=s
right to seek reinstatement is significantly different today than it was in
1963.  Today, a corporation can be
reinstated by filing the appropriate paperwork and paying any delinquent tax,
penalty, or interest.  See Tex. Tax Code Ann. '' 171.312-.313 (Vernon
2002).  In 1963, a corporation whose
charter had been forfeited had no remedy or appeal.  See McGown v. Kittel, 480 S.W.2d 47,
49 (Tex. Civ. App.CFort
Worth 1972, writ ref=d
n.r.e.) (prior to 1965 there was no procedure for a corporation whose charter
had been forfeited to make application for its reinstatement).  The reinstatement process was added by the
legislature in 1965.  The emergency
clause of that legislation provided:

The fact that corporations have no procedure by
which to reinstate their charter and right to do business after the forfeiture
of their charter creates an emergency and an imperative public necessity that
the Constitutional Rule requiring bills to be read on three several days in
each House be suspended.

 

Id.  The 1965
legislation did not have retroactive effect. 
Id. at 49-50; Gano v. Filter-Aid Co., 414 S.W.2d 480 (Tex.
Civ. App.CAustin
1967, no writ).  Consequently, in 1963
when the secretary of state entered its forfeiture order, the 1959 corporation
had no right to seek reinstatement.

When the 1959 corporation=s
charter was forfeited, title to its assets bifurcated.  Legal title remained in the corporation, and
beneficial title vested in the shareholders. 
Regal Constr. Co. v. Hansel, 596 S.W.2d 150, 153 (Tex. Civ. App.CHouston [1st Dist.] 1979, writ ref=d n.r.e.).  In El T. Mexican Restaurants, Inc. v.
Bacon, 921 S.W.2d 247 (Tex. App.CHouston
[1st Dist.] 1995, writ denied), the court described the effect of a charter
forfeiture on the ability to assert the corporation=s
rights in court.  The Houston court
concluded that the corporation had standing, but not capacity, while the
shareholder had capacity, but not standing. 
921 S.W.2d at 251-52.  The court
noted that a corporation with legal title to a cause of action could still
dispose of that claim, but because of the forfeiture, the corporation could not
assign the claim to its shareholder for prosecution in a Texas court.  Id. at 252, n.6.  Consequently, even if we assume the 1959
corporation still exists in some form, the secretary of state=s forfeiture order deprived it of the
right to conduct any further business in the state.  This would necessarily include any assignment
of the 1954 lease and would prevent anyone else from asserting a claim on its
behalf in Texas courts.

The record establishes that the 1959 corporation
did not assign its interest to the 1986 corporation.  Over twenty years elapsed from the secretary
of state=s
forfeiture order to the creation of the 1986 corporation.  The trial court was given no evidence of any
action taken to reinstate the 1959 corporation or of any effective assignment
of rights prior to February 6, 1963.  In
the absence of a reinstatement or at least a right of reinstatement, the 1959
corporation had insufficient existence by 1986 to convey any rights to the new
corporation.   The trial court did not
err when it found there was no assignment of interest.

 








4. 
Estoppel.

The doctrine of equitable estoppel requires (1) a
false representation or concealment of material facts; (2) made with knowledge,
actual or constructive, of those facts; (3) with the intention that it should
be acted on; (4) to a party without knowledge or means of obtaining knowledge
of the facts; (5) who detrimentally relies on the representations.  Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 515-16 (Tex. 1998).  Odessa Texas Sheriff=s
Posse acknowledges the general rule that, when a governmental entity is
exercising its governmental powers, it is not subject to estoppel.  City of Hutchins v. Prasifka, 450
S.W.2d 829, 835 (Tex. 1970).  However,
Odessa Texas Sheriff=s
Posse points to an exception when no governmental function is impaired and
estoppel is necessary to prevent injustice. 
Id. at 836.  Ector County
argues that this rule applies only to municipalities and that it cannot be
asserted against a county.  

Both parties acknowledge that the Texas Supreme
Court has not specifically addressed whether the estoppel exception applies to
governmental entities other than municipalities, and neither side has cited a
case where the exception was applied to any entity other than a
municipality.  Both parties draw our attention
to City of White Settlement v. Super Wash, Inc., 198 S.W.3d 770 (Tex.
2006), where the court held that White Settlement was not estopped from
enforcing an ordinance because the exception was not applicable under the facts
of that case.  The court=s opinion includes a discussion of the
policy reasons supporting the general rule and the exception.  The court=s
opinion refers only to municipalities being estopped,[5]
but this may be explained by the fact that the city was the only governmental
entity involved.  The court does,
however, include a reference to the differences between the exercise of
governmental and proprietary functions, noting that, when a municipality is
performing a proprietary function, it is subject to equitable estoppel.  Id. at 773, n.3.  That discussion is relevant only to
municipalities because only a municipality may exercise a proprietary function.








Odessa Texas Sheriff=s
Posse argues the exception is particularly appropriate in takings cases because
it can otherwise be deprived of its constitutional rights.  This argument confuses cause and effect.  The takings clause applies only if Odessa Texas
Sheriff=s Posse
has a property interest in the first instance. 
Odessa Texas Sheriff=s
Posse does not ask us to apply the exception to preserve a property interest
but, rather, to create one.  Estoppel
does not create new property rights.  It
deprives one party of the opportunity to assert a claim or defense.  Consequently, we cannot agree with Odessa
Texas Sheriff=s Posse
that the estoppel rules are applied any differently in takings cases.

We recognize that, because the Texas Supreme Court
has not expressly stated that estoppel cannot be applied to counties, there
remains some uncertainty on this issue. 
However, we do not think it is merely coincidental that the court
referred only to municipalities rather than governmental entities generally in
its White Settlement opinion.  Nor
can we disregard the fact that the court has never applied estoppel to any
entity other than a municipality.  Because
only municipalities can exercise proprietary functions, and the court was
careful to distinguish between governmental and proprietary activities, we
believe the court would not apply estoppel to a county.

If we are incorrect, we do not believe the exception
is applicable under the facts of this case. 
First, a governmental entity cannot be estopped from exercising its
governmental functions.  See Prasifka,
450 S.W.2d at 835 (enforcing zoning restrictions); Rolison v. Puckett,
198 S.W.2d 74, 77 (Tex. 1946) (collecting taxes).  Ector County=s
airport expansion is a governmental function. 
Granted, Odessa Texas Sheriff=s
Posse is not attempting to stop the expansion B
but using estoppel to create property rights that would not otherwise exist
would constitute an interference with that process.  Second, the exception requires evidence that
the county acted deliberately to induce the Odessa Texas Sheriff=s Posse to act in a way that benefitted
the county but prejudiced the organization. 
See White Settlement, 198 S.W.3d at 775. 

Odessa Texas Sheriff=s
Posse points to considerable evidence that the property has been in continuous
use since 1954, that many of the activities carried out on the property or by
the organization benefitted the county, and that the county always treated it
as an authorized occupant. It does not, however, point to any affirmative
misstatement which induced action on its part.  









Whether the estoppel exception applies is a
question for the court.  Burrow v.
Arce, 997 S.W.2d 229, 245 (Tex. 1999). 
The record is absent evidence of the type of affirmative misstatement
required by the supreme court.  It
appears that both parties mistakenly believed Odessa Texas Sheriff=s Posse was the same entity that
executed the 1954 lease and that, when the decision was made to expand the
airport runway, the parties engaged in significant conversation about
relocation and financial assistance. 
But, just as in White Settlement, these facts are insufficient to
establish the estoppel exception.

We find that the trial court did not err when it
determined that Odessa Texas Sheriff=s
Posse did not have standing.  Odessa
Texas Sheriff=s Posse=s first two issues are overruled.  Because Odessa Texas Sheriff=s Posse does not have standing, it is
unnecessary for us to consider the third issue relating to a potential takings
claim. 

C.  Texas
Open Meetings Act

Odessa Texas Sheriff=s
Posse also asserted an Open Meetings Act[6]
claim, contending that the commissioners=
court=s March
28 and May 9, 2005 meeting notices were inadequate and that the county=s subsequent decision to evict it was
void.  Ector County did not dispute
Odessa Texas Sheriff=s
Posse standing to assert a TOMA claim, but challenged the merits of the claim
in part, with a traditional motion for summary judgment.[7]  Odessa Texas Sheriff=s
Posse responded with a motion for partial summary judgment arguing that a TOMA
violation was established as a matter of law.

Ector County is subject to the Texas Open Meetings
Act.  TOMA generally requires that meetings
of governmental bodies be open to the public[8];
that they provide written notice of the date, hour, place, and subject matter
of a meeting[9];
and that, when an issue is one of special interest to the public, they provide
full and adequate notice of the subject matter of the meeting so that an
objective reader receives meaningful notice. 
Mayes v. City of De Leon, 922 S.W.2d 200, 203 (Tex. App.CEastland 1996, writ denied).








The Odessa Texas Sheriff=s
Posse lease and potential relocation were complicated by a number of factors B 
including the fact that there were two posse organizations.  On February 14, 2005, Ector County=s first assistant county attorney
reported that the organization that occupied the building was not the same one
that formed the original Ector County Sheriff=s
Posse, that there had been division within the posse in 2003, and that one
group kept the original name and the other remained at the airport and was
involved in negotiations with the county. 

The commissioners met again on March 10,
2005.  Their meeting notice included the
following item: A[T]o
consider and discuss concerns from the Ector County Sheriff=s Posse.@  Mary Lewis, a member of the Ector County
Sheriff=s Posse,
appeared and suggested that the county consider allowing Odessa Texas Sheriff=s Posse to use Moss Arena and that the
TxDOT grant be used to build additional stalls rather than a replacement
facility.  Following her remarks, the
commissioners= court
allowed Odessa Texas Sheriff=s
Posse=s
attorney to speak.  Lewis=s recommendations and the relocation
issue were discussed.  At the end of the
meeting, the relocation issue was tabled so that the attorneys could continue
their discussions with the hope that the issue could be finally resolved at the
next commissioners= court
meeting. 

The next meeting was on March 28, 2005.  The meeting notice provided in relevant
part:  ATo
consider and discuss concerns from the Ector County Sheriff=s Posse, B
Jerry D. Caddel, County Judge.@  This was the same language that had been used
for the previous meeting.  The record
does not include a transcript of this meeting and, thus, we do not know if
Ector County Sheriff=s
Posse addressed the commissioners=
court again.  But, the record establishes
that the commissioners=
court voted to not execute a proposed contract with Odessa Texas Sheriff=s Posse, to retain outside counsel to
send notice that the lease was void, and to provide it with thirty days to
vacate the property.  Odessa Texas
Sheriff=s Posse
contends that the meeting notice was defective because it was vague and
inaccurate and that the commissioners=
vote was illegal because the notice did not indicate any action would be taken.

The commissioners=
court met again on May 9, 2005.  The
notice for this meeting provided:

Pursuant to '
551.071 of the Texas Government Code, consult with attorneys pertaining to
pending litigation: Odessa Texas Sheriff=s
Posse, Inc. v. Ector County, Texas: Cause No. C-119,360 in the District Court
of Ector County, Texas, 244th Judicial District and in open session
take any and all action necessary concerning said pending litigation; Pursuant
to ' 551.072 of the Texas Government Code,
deliberate the purchase, exchange lease or value of real property in open
session take any and all action necessary pertaining to same. B Jerry D. Caddel, County Judge.








Following the executive session, the commissioners= court voted to direct the county=s attorneys to take all steps necessary
to defend the litigation and to file any other action they deemed
necessary.  Odessa Texas Sheriff=s Posse contends that this notice was
also defective because it provided inadequate notice and, therefore, that the
county=s
eviction decision was void.

Because the notices=
content is undisputed, their adequacy is a question of law.  Rettberg v. Texas Dep=t of Health, 873 S.W.2d 408, 413
(Tex. App.CAustin
1994, no writ).  The test is whether a
notice is sufficiently specific to alert the general public to the topic to be
considered.  City of San Antonio v.
Fourth Court of Appeals, 820 S.W.2d 762, 765 (Tex. 1991).  If a notice specifically discloses the
subject to be considered, TOMA=s
requirements are met and the governmental body can take final action, decide,
or vote on a matter.  City of San
Angelo v. Tex. Nat=l
Resource Conservation Comm=n,
92 S.W.3d 624, 629 (Tex. App.CAustin
2002, no pet.).

Odessa Texas Sheriff=s
Posse asserts several challenges to the March 28 meeting notice. These can be
grouped into two categories:  first, that
the notice failed to give adequate notice of the subject matter of the meeting
and, second, that it failed to disclose that action might be taken.        Ector
County was not required to specifically indicate that it might vote.  By stating that it intended to Aconsider@
concerns from the Ector County Sheriff=s
Posse, the public was given adequate notice that action might be taken.  See id. at 629-30.  However, the same cannot be said for the
meeting=s subject
matter.  To consider if a notice
sufficiently informs the public of the topic under discussion, we compare the
content of the notice given and the action taken at the meeting.  Rettberg, 873 S.W.2d at 412.  Just as the 1959 corporation and 1986
corporation were separate entities, Ector County Sheriff=s
Posse and Odessa Texas Sheriff=s
Posse are separate entities.  Ector
County=s notice
that it would consider Ector County Sheriff=s
Posse concerns did not advise the public that the County might consider taking
action against Odessa Texas Sheriff=s
Posse.  The March 28 notice, therefore,
did not satisfy TOMA.








To determine the effect of this holding, we must
consider the May 9 meeting.  Unlike the
March 28 notice, the May 9 notice correctly identified Odessa Texas Sheriff=s Posse; it specifically referred to the
pending litigation; and it indicated that the commissioners would meet with
counsel in executive session to discuss the litigation and, in open session,
might take any and all action necessary concerning that litigation.  Odessa Texas Sheriff=s
Posse argues this notice was still insufficient because it only referred to
potential action to defend the pending litigation and did not indicate that the
county might authorize its attorneys to initiate new litigation.  Consequently, it concludes that the eviction
notice sent following the meeting was void.

It is unnecessary to provide notice of all of the
consequences which might flow from consideration of the stated subject.  Turnpike Auth. v. City of Fort Worth,
554 S.W.2d 675, 676 (Tex. 1977).  Ector
County provided an affidavit from the attorney who wrote the May 10 eviction
notice.  He stated that the notice was
sent in response to the May 9 meeting and explained why the eviction notice was
part of the county=s defense
to Odessa Texas Sheriff=s
Posse=s
litigation.  Odessa Texas  Sheriff=s
Posse did not contest that affidavit. 
The eviction notice is rationally related to the litigation.  It challenged the inverse condemnation claim
by denying any right of possession.  We
find that Ector County=s
May 9 meeting notice complied with TOMA and, therefore, that the May 10
eviction notice was not void.[10]  Odessa Texas Sheriff=s
Posse=s fourth
and fifth issues are overruled to the extent they challenge the sufficiency of
the May 9 meeting notice and contend the May 10 eviction notice was a void act.

That does not automatically moot the challenge to
the March 28 notice.  The general rule is
that a governmental body may not ratify a prior illegal act.  Mayes, 922 S.W.2d at 203.  It may, however, correct its actions so long
as the corrective action has no retroactive effect.  Lower Colorado River Auth. v. City of San
Marcos, 523 S.W.2d 611, 646-47 (Tex. 1975). 
Odessa Texas Sheriff=s
Posse did not vacate the property in response to the first eviction
notice.  The May 10 notice did not have
retroactive effect because it provided thirty days notice to vacate the
property.  It is, therefore, unnecessary
to determine if the original eviction notice was a void act.








At oral argument, Odessa Texas Sheriff=s Posse=s
counsel argued that, even if the May 9 meeting notice was sufficient, it would
still have a claim for attorney=s
fees if the March 28 meeting notice was insufficient.  This is correct.  Section 551.142 provides that a prevailing
party in a TOMA action may recover its fees and costs.  Whether to make an award falls within the
trial court=s sound
discretion.  Bell v. Katy Indep. Sch.
Dist., 994 S.W.2d 862, 867 (Tex. App.CHouston
[1st Dist.] 1999, no pet.).  Because the
trial court has not yet had the opportunity to exercise its discretion, a
partial remand is appropriate.  We
sustain Odessa Texas Sheriff=s
Posse=s fourth
and fifth issues to the extent they contend the March 28 meeting notice failed
to comply with TOMA.  

                                                         V.
Holding

The trial court=s
judgment is affirmed in part and reversed and remanded in part.  The judgment is reversed to the extent the
trial court found that the March 28 meeting notice complied with TOMA, and this
matter is remanded for determination of whether an award of attorney=s fees and costs is appropriate and, if
so, in what amount.  In all other
respects, the trial court=s
judgment is affirmed.

 

 

RICK STRANGE

JUSTICE

 

October 26, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Ector
County also filed a no-evidence motion for summary judgment.  The trial court denied that motion as moot.





     [2]The
court cited Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 n.3 (1st
Cir. 2001); Cameron v. Children=s
Hosp. Med. Ctr., 131 F.3d 1167, 1170
(6th Cir. 1997); and Williamson v. Tucker, 645 F.2d 404, 413, n.6 and
416, n.10 (5th Cir. 1981).





     [3]With
respect to standing, the trial court found:

 

1.  Plaintiff
presently is not and has never been a party to the February 27, 1954 lease.

 

2.  No assignment
of any right or interest to or in the February 27, 1954 lease has ever been
conveyed to or received by Plaintiff.

 

3.  Assuming an
assignment of this lease did exist, no competent summary judgment evidence has
been presented to this Court of any affirmative, binding, formal, legal or
unequivocal action or conduct of or by Defendant consenting to, ratifying or
recognizing such an assignment. 

 

4.  Plaintiff has not been recognized in any
capacity as a successor in interest to the February 27, 1954 lease by any
affirmative, binding, formal, legal or unequivocal action or conduct of or by
Defendant.





     [4]Ector
County does not attempt to distinguish between the unincorporated organization
that signed the l954 lease and the entity which was incorporated in 1959.  It is unnecessary for us to determine if the
1959 incorporation had any impact on the lease, and we express no opinion on
this issue.





     [5]I.e.:
A[W]e also found >authority
for the proposition that a municipality may be estopped in those cases
where justice requires its application, and there is no interference with the
exercise of its governmental functions.=@ 198
S.W.3d at 774 (quoting Prasifka, 450 S.W.2d at 836) (emphasis added); AEvidence that city officials acted deliberately
to induce a party to act in a way that benefitted the city but
prejudiced the party weighs in favor of applying the exception articulated in Prasifka.@  Id. at
775 (emphasis added); AWe first note that precluding a city from
performing a specific governmental function in a single instance is not per
se interference with its governmental functions.  Otherwise, every attempt to estop a city
would be considered interference with a governmental function, and the
exception stated in Prasifka could never apply.@ Id. at 776 (first and third emphasis added); AGenerally, a court may estop a city only if it
would not interfere with the city=s ability to perform any act that the Legislature has
deemed, or that the court determines to be, a municipal governmental
function.@  Id. at
777 (emphasis added).





     [6]Texas
Open Meetings Act (TOMA), Tex. Gov=t Code Ann. ch. 551 (Vernon 2004 & Supp 2006).





     [7]Ector
County contended that the May 9 notice was sufficient as a matter of law but
did not contest Odessa Texas Sheriff=s Posse=s contention regarding the sufficiency of the March 28
notice.





     [8]Section
551.002.





     [9]Section
551.041.





     [10]We
need not determine if this issue is one of special interest to the public
because the notice would be sufficient under that standard as well.